[No. 5043.   Decided August 10, 1904.]

# THE STATE OF WASHINGTON, *Respondent,* v. PAUL UNDER-WOOD, *Appellant.*[1]

CONTINUANCE—CRIMINAL LAW—WITHDRAWAL OF ATTORNEY FIVE DAYS BEFORE TRIAL—DISCRETION. Where an attorney, employed to defend against a charge of murder, withdrew from the case on the fifth day before trial, and the defense was entrusted to three other attorneys, it appearing that the facts of the case were simple and readily accessible, it was not an abuse of discretion for the trial court to deny defendant's motion for a continuance upon the affidavits of his attorneys that it would be impossible for them to properly prepare for trial in the time remaining.

HOMICIDE—DIFFERENT DEGREES—VERDICT FOR LESSER DEGREE WHERE EVIDENCE SHOWED HIGHER DEGREE. Upon a trial for murder in the first degree in having caused the death of an infant by drowning, where the main issue was whether the death was caused by drowning or by an accidental overdose of chloroform, and there was sufficient evidence to support either theory, and the jury are instructed to find the defendant not guilty if they believe the death was caused by chloroform or entertain a reasonable doubt as to the drowning, a verdict of murder in the second degree should not be set aside upon the theory that the jury must find the defendant guilty of the first degree or not at all, and accused cannot complain that he was found guilty of a lesser degree than the evidence warranted.

HOMICIDE—DEGREES OF OFFENSE—INSTRUCTIONS PROPER AS TO LESSER DEGREE ALTHOUGH EVIDENCE SHOWED FIRST DEGREE ONLY. In a prosecution for murder in the first degree by causing the death of an infant by drowning, in which there was evidence that the defendant was guilty as charged and also that the death was accidental, the contention being that he was guilty of murder in the first degree or not at all, it is not error to instruct the jury that they may find the defendant guilty in the second degree or of manslaughter, since the deliberation and premeditation necessary to constitute the first degree, under the statute, do not necessarily follow from the facts showing malice, and must be submitted to and found by the jury, and the charge necessarily includes, and warrants a finding of, the lesser degrees.

[1]Reported in 77 Pac. 863.

CRIMINAL LAW—EVIDENCE—EXPERTS—OPINION AS TO PROPER METHOD OF CONDUCTING POST MORTEM EXAMINATION. Where experts are asked hypothetical questions showing their ideas as to the proper method of conducting a post mortem examination to determine the cause of death, it is not error to sustain an objection to a question as to whether another course, omitting steps which they considered necessary, was a sufficient and thorough examination to determine the cause of death.

EVIDENCE — EXPERTS — HYPOTHETICAL QUESTION — EXAMINER'S THEORY OF CASE. A hypothetical question calling for the opinion of an expert witness and based upon a detailed statement of the testimony of different witnesses, is not objectionable, although such testimony is not entirely harmonious, where the jury had a right to find the facts as stated, it being sufficient, if the question fairly states such facts as present the examiner's theory of the case.

CRIMINAL LAW — EVIDENCE — GOOD CHARACTER — INSTRUCTIONS. Where evidence of defendant's good reputation was not questioned as being the best evidence thereof, and its bearing upon the question of defendant's guilt was properly explained by an instruction to the jury, it was not error to refuse an instruction that, where a witness testifies that he knows the defendant and his associates in the community in which he lives, and that his character has never been questioned, such character is good.

SAME—TRIAL—HARMLESS ERROR IN INSTRUCTIONS. Erroneous instructions authorizing the jury to find the defendant guilty of murder in the first degree, could not have been prejudicial where the verdict was guilty of the second degree.

NEW TRIAL—MISCONDUCT OF JUROR—BIAS—CHARGE OF WILFULLY QUALIFYING. It is proper to deny a motion for new trial upon the ground of misconduct of the jury, upon affidavits showing prejudice by one of the jurors, and that he had wilfully qualified, where the charge is denied and is entirely overcome by other affidavits; and findings of the trial court in that respect reviewed and approved.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE. A motion for a new trial upon the ground of newly discovered evidence is properly denied where the evidence is wholly cumulative.

Appeal from a judgment of the superior court for King county, Tallman, J., entered October 14, 1903, upon a trial and conviction of the crime of murder in the second degree. Affirmed.

*Silas M. Shipley, E. E. Shields,* and *T. D. Page,* for
appellant, argued, *inter alia,* that it was error to dèny the
motion for a continuance. *State v. Brooks,* 39 La. Ann.
239, 1 South. 421; *State v. Collins,* 104 La. 629, 29 South.
180; *State v. Deschamps,* 41 La. Ann. 1051, 7 South. 133;
*Bartel v. Tieman,* 55 Ind. 438; *Wray v. People,* 78 Ill.
212; *North v. People,* 139 Ill. 81, 28 N. E. 966; *State v.
Lewis,* 74 Mo. 222. Under the evidence it was error to
submit to the jury the question of guilt in a lesser degree
than that charged. 1 Bishop, Crim. Proc. § 9; *State v.
Craft,* 164 Mo. 631, 65 S. W. 280; *Smith v. United States,*
1 Wash. Ter. 262; 10 Enc. Plead. & Prac., 164; *State v.
Stoeckwell,* 71 Mo. 559; *State v. Hollingsworth,* 156 Mo.
178, 56 S. W. 1087; *State v. Holloway,* 156 Mo. 222, 56
S. W. 734; *People v. Byrnes,* 30 Cal. 207; *Smith v. Peo-
ple,* 1 Col. 145; *State v. Calder,* 23 Mont. 504, 59 Pac.
903; 1 Bishop, Crim. Proc. (3d ed.), § 980; *Fertig v.
State,* 100 Wis. 301, 75 N. W. 960; *Cornell v. State,* 104
Wis. 527, 80 N. W. 745; *People v. Turly,* 50 Cal. 469;
*People v. Lee Gam,* 69 Cal. 552, 11 Pac. 183; *State v.
Hopper,* 71 Mo. 425; *State v. Umble,* 115 Mo. 452, 22 S.
W. 378; *People v. Chavez,* 103 Cal. 407, 37 Pac. 389;
*People v. Chaves,* 122 Cal. 134, 54 Pac. 596; *Sparf v.
United States,* 156 U. S. 51, 15 Sup. Ct. 273, 39 L. Ed.
343; *Davis v. United States,* 165 U. S. 373, 17 Sup. Ct.
360, 41 L. Ed. 750; *Andersen v. United States,* 170 U. S.
510, 18 Sup. Ct. 689, 42 L. Ed. 1116; *State v. Robinson,*
12 Wash. 349, 41 Pac. 51, 902; *State v. Fruge,* 106 La.
694, 31 South. 323; *People v. Huntington,* 138 Cal. 261,
70 Pac. 284; *Pugh v. State,* 114 Ga. 16, 39 S. E. 875;
*Carr v. State* (Fla.), 34 South. 892; *Strong v. State,* 63
Neb. 440, 88 N. W. 772; *State v. Cole,* 63 Iowa 695, 17 N.
W. 183; *State v. Mahan,* 68 Iowa 304, 20 N. W. 449, 27

N. W. 249; *State v. Munchrath,* 78 Iowa 268, 43 N. W. 211; *State v. Sterrett,* 80 Iowa 609, 45 N. W. 401; *State v. Reed,* 162 Mo. 312, 62 S. W. 982; *Sanders v. State,* 113 Ga. 267, 38 S. E. 841. Under such instructions a conviction should be reversed. *State v. Diller,* 170 Mo. 1, 70 S. W. 139; *Gafford v. State,* 125 Ala. 1, 28 South. 406; *Futch v. State,* 90 Ga. 472, 16 S. E. 102; *May v. State,* 94 Ga. 76, 20 S. E. 251; *McGrath v. State,* 35 Tex. Cr. Rep. 413, 34 S. W. 127; *Jarvis v. State,* 70 Ark. 613, 67 S. W. 76; *State v. Vinso,* 171 Mo. 576, 71 S. W. 1034; *New v. Territory,* 12 Okla. 172, 70 Pac. 199; *State v. Dixon,* 131 N. C. 808, 42 S. E. 944; *Strong v. State,* 63 Neb. 440, 88 N. W. 772; *Hall v. State,* 130 Ala. 45, 30 South. 422; *People v. McFarland,* 134 Cal. 618, 66 Pac. 865; *Johnson v. State,* 78 Miss. 627, 29 South. 515; *Rogers v. State* (Miss.), 34 South. 320; *Flynn v. State,* 43 Tex. Cr. Rep. 407, 66 S. W. 551. It is error to instruct as to manslaughter where there is no evidence to support such a charge. *Johnson v. State,* 78 Miss. 627, 29 South. 515; *State v. Edwards,* 71 Mo. 312; *State v. Wilson,* 86 Mo. 520; *Mackey v. Commonwealth,* 80 Ky. 345; *State v. Hanley,* 34 Minn. 430; *People v. Rogers,* 13 Abb. Prac. (N. S.) 370; *Green v. State,* 27 Tex. App. 244; *Henning v. State,* 24 Tex. App. 315. Where there is but one question, as, for instance, that of identity, the verdict should be guilty of murder in the first degree or not guilty. *State v. Dixon,* 131 N. C. 808, 42 S. E. 944; *State v. Spivey,* 132 N. C. 989, 43 S. E. 475; *State v. Furgeson,* 162 Mo. 668, 63 S. W. 101; *Griffin v. State,* 113 Ga. 279, 38 S. E. 844; *State v. Meadows,* 156 Mo. 110, 56 S. W. 878; *State v. Lucey,* 24 Mont. 295, 61 Pac. 994; *Cannon v. State,* 41 Tex. Cr. Rep. 467, 56 S. W. 351; *Hays v. State* (Tex.), 57 S. W. 835; *State v. Rose,* 129

N. C. 575, 40 S. E. 83; *Hunnicutt v. State,* 114 Ga. 448, 40 S. E. 243; *Jordan v. State,* 117 Ga. 405, 43 S. E. 747.

*W. T. Scott* and *Elmer E. Todd,* for respondent, contended, *inter alia,* that it is not error to deny a continuance, if defendant is not prejudiced. *People v. Collins,* 75 Cal. 411, 17 Pac. 430; *State v. Reid,* 20 Iowa 413; *State v. Rhea,* 25 Kan. 576; *People v. Considine,* 105 Mich. 749, 63 N. W. 196; *Holland v. People,* 30 Colo. 94, 69 Pac. 519; *State v. Rice,* 7 Idaho 762, 66 Pac. 87; *State v. Baptiste,* 108 La. 586, 32 South. 461; *Simmons v. State,* 116 Ga. 583, 42 S. E. 779; *Rone v. Commonwealth* (Ky.), 70 S. W. 1042; *State v. Gilbreath,* 106 Tenn. 503, 62 S. W. 147; *State v. Madison,* 49 W. Va. 96, 38 S. E. 492; *Mayfield Lumber Co. v. Carver,* 27 Tex. Civ. App. 467, 66 S. W. 216; *Freeman v. State* (Miss.), 29 South. 75. Where the evidence would sustain a verdict of guilty in the first degree, a defendant cannot complain of a conviction of a lesser degree. *Commonwealth v. McPike,* 3 Cush. 181; *State v. Schieller,* 130 Mo. 510, 32 S. W. 976; *Briscoe v. State,* 37 Tex. Cr. Rep. 464, 36 S. W. 281; *Allen v. State,* 37 Ark. 433; *Brown v. State,* 31 Fla. 207, 12 South. 640; *Marshall v. State,* 32 Fla. 462, 14 South. 92; *Rolls v. State,* 52 Miss. 391; *Elliston v. State,* 10 Tex. App. 361; Bishop, Crim. Law, § 791; *Commonwealth v. Burke,* 14 Gray 100; *Commonwealth v. Creadon,* 162 Mass. 466, 38 N. E. 1119. It was for the jury to determine the degree of murder as well as the question of guilt. Bal. Code, §§ 6955, 6907; Const., art. 4, § 16; *Rhodes v. Commonwealth,* 48 Pa. St. 396; *Lane v. Commonwealth,* 59 Pa. St. 371; *Brown v. State,* 109 Ala. 70, 20 South. 103; *Jackson v. State,* 136 Ala. 88, 34 South. 188; *State v. Locklear,* 118 N. C. 1154, 24 S. E. 410; *State v. Gadberry,* 117 N. C. 811, 23 S. E. 477; *State v. Cunningham,* 111 Iowa

233, 82 N. W. 775; *State v. Crockett,* 39 Ore. 76, 65 Pac.
604. Defendant could not have been prejudiced by in-
structions as to manslaughter, having been convicted of a
higher degree of homicide. *State v. Goddard,* 162 Mo.
198, 62 S. W. 697; *State v. McMullin,* 170 Mo. 608, 71 S.
W. 221; *Johnson v. State,* 44 Tex. Cr. Rep. 332, 71 S. W.
25; *State v. Talbott,* 73 Mo. 347; *State v. Ellis,* 74 Mo.
207; *State v. Glahn,* 97 Mo. 679, 11 S. W. 260; *Territory
v. Salazar,* 3 N. M. 210, 5 Pac. 462.

MOUNT, J.—Appellant was convicted of murder in the
second degree, and appeals from a judgment entered
thereon. The undisputed facts are substantially as fol-
lows: During the Month of May, 1902, appellant and
his wife were living at Ballard, in King county. On the
15th day of May, 1902, a female child was born to them.
On the last day of May, 1902, appellant disposed of all
his household goods, and Mrs. Underwood and the baby
spent the evening with Mrs. Hetzler, a neighbor. At about
nine o'clock appellant came to the house of Mrs. Hetzler
and, in company with his wife and baby, started for Se-
attle. The baby at that time was asleep and apparently
well. The next morning, June 1, 1902, at about 6:30
o'clock, the baby was found dead on the tide flats, near the
street car line leading to Seattle. The baby was tied inside
of a sack, in the bottom of which was a stone weighing
about ten pounds. The weight of the baby was about
eight pounds. The body was carried to an undertaking
establishment, where a post mortem examination was held
on the next day, viz., June 2, 1902, when the doctors pres-
ent concluded that death resulted from drowning. On
June 1, defendant and wife left Seattle for Aberdeen,
where their parents resided. On Tuesday, June 3, 1902,
defendant heard that there was a warrant out for his

arrest, and fled, but was afterwards arrested in the woods near Tokeland.

Defendant confessed that he had killed the child, but stated that the killing was done accidentally without criminal intent, and substantially as follows: That soon after leaving the house of Mrs. Hetzler, and while he and his wife were waiting for a street car on which to ride to Seattle, the child became sick and appeared in much distress; that, in order to relieve the suffering of the child, he administered chloroform which he happened to have in his pocket; that through inadvertence an overdose was given, from which the child died; that, being without friends and money, and not knowing what to do, defendant and his wife decided to dispose of the body by dropping it into the bay; that thereupon defendant went back to the house where they had lived, which was but a short distance away, and procured a sack and a rock, and placed the baby in the sack with the rock, and dropped sack and all into the bay, where it was found.

On a trial before a jury, the defendant was found guilty of murder in the second degree. Other facts necessary to an understanding of the questions discussed will be stated hereafter. Appellant assigns errors as follows: (1) In overruling appellant's motion for a continuance; (2) that the evidence is insufficient to support the verdict of murder in the second degree; (3) in submitting to the jury the question of appellant's guilt of any crime other than murder in the first degree; (4) in ruling on the admissibility of evidence; (5) in refusing to grant a new trial, because of misconduct of a juror, and of newly discovered evidence. We shall consider these assignments in the order stated.

(1) Soon after appellant's arrest, his father employed M. K. Snell, an attorney of Tacoma, to defend the accused. Snell accepted the employment, and was relied upon by

appellant to defend the case and procure witnessess. Defendant's father and mother, being poor people, sold and mortgaged all the property they had to raise money to pay Mr. Snell his fee. Three hundred and sixty-five dollars was paid thereon. Soon after the arrest of the defendant, he was arraigned in open court, entered a plea of not guilty, and the case was set down to be tried on September 22, 1902. On September 14, appellant's father employed E. E. Shields, an attorney of Aberdeen, to assist Mr. Snell in the trial of the case. On September 16th Mr. Snell notified appellant's father that he would withdraw from the case, and turned over to Mr. Shields all the papers and memoranda he had in the case, and thereafter also returned $250 of the money paid thereon. On the 18th Snell filed his withdrawal with the clerk, and on the same day the present attorneys appeared and filed a motion for a continuance of the trial for one month, upon the grounds that Mr. Snell had withdrawn from the case, and that thirty days would be necessary for counsel to prepare for the trial. This motion was supported by several affidavits, stating at length the employment and withdrawal of Mr. Snell, and that he had done nothing, and was of no assistance in finding witnesses for the defense, and that counsel then employed could not prepare, either upon the facts or law, in the short time remaining before the day set for the trial. The court, after hearing these affidavits and arguments by counsel, denied the motion on the same day it was filed. This ruling is the first error assigned.

This motion for a continuance was not based upon any statutory ground, but depended upon the discretionary power of the trial judge. This power will be reviewed and revised only for its abuse. It is true, so far as the affidavits show, that no fault attached to the appellant for the withdrawal of his principal attorney five days before

the day set for the trial of the cause. It also appears, from the statements in the affidavit of the three attorneys representing appellant at the motion for a continuance, that it would be impossible for them to properly prepare for a trial of so much importance in so short a time as was remaining from the 18th to the 22d of September. This latter statement appears to be the principal one relied upon. The argument is made that appellant was entitled to a fair trial, and to be represented by counsel who were required to give their best ability to the interests of their client; that, in order to do this, they must have time to prepare themselves for the trial. But whether attorneys could possibly or properly prepare for the trial of the case in the three or four days left is a relative question, depending upon the circumstances of the particular case. It is claimed that many technical medical questions would arise, and that it was therefore necessary for defendant's counsel to prepare themselves upon that branch of the case, and particularly in reference to the symptoms and condition manifested upon a body which had met death by drowning. The facts in the case were few and very simple. It was not claimed that there were any absent witnesses. All who knew about the death of the child were at hand. The place where the child came to its death was within six miles of Seattle, where two of appellant's attorneys then resided, and on the line of a street car. Where the facts were so readily accessible, it seems that two or three days ought to be enough time to obtain them. It may be true, as counsel states, that it was necessary for counsel to inquire as to the symptoms of death by drowning and those caused by chloroform, in order to intelligently examine and cross-examine the expert witnesses thereon; but it seems to us that the time at the disposal of three competent attorneys was amply sufficient therefor. After reading all

the evidence and the whole record, we are convinced that the trial court did not abuse its discretion in refusing a continuance of the case upon the grounds stated.

(2)   Appellant next insists that the evidence is not sufficient to support the verdict of murder in the second degree, because, under the evidence in the case, the defendant is guilty of murder in the first degree or is not guilty at all.   This contention is based upon the fact that there is no direct evidence of deliberate or premeditated malice; but that these elements of the crime depend upon circumstances.   The main issue of fact was whether the child was drowned or was killed by chloroform.   The court instructed the jury that, if they entertained a reasonable doubt that the child was drowned, or if they believed that the child came to its death by chloroform, then they must find the defendant not guilty.   It is argued that the same evidence which proved the death of the child by drowning also proved deliberation and premeditation, and, since the jury found that there was no deliberate and premeditated malice, they must have found the defendant not guilty. There was evidence to support a verdict of murder in the first degree, and appellant cannot complain because he was convicted of a lesser offense than the evidence warranted. Appellant argues that the evidence shows that the child's death did not result from drowning.   It is true that the defendant himself testified that the death was caused by an overdose of chloroform.   It is also true that some of the physicians testified that, from certain symptoms, death may have resulted from chloroform.   There was also much evidence that death resulted from drowning.   This question was one entirely for the jury, and, from a careful reading of the whole evidence, which need not be reviewed here, we are of the opinion that there was ample evidence that death resulted from drowning, and that therefore there

was evidence to support a verdict of either degree of murder.

(3)   It is next assigned as error that the court submitted to the jury the question of murder in a lesser degree than the first.   The court instructed the jury to the effect that: "Under this information and the laws of this state, the defendant can be convicted, if the evidence justifies it, of any one of three offenses. . . These offenses are murder in the first degree, murder in the second degree, and manslaughter."   The court then proceeded to define each of these degrees of murder.   It is argued that, because under the evidence but one of two verdicts could be returned, viz., guilty of murder in the first degree or not guilty, it was error to instruct the jury upon any other degrees of the crime charged.   Many authorities are cited to the effect that, where there is no evidence which might authorize a verdict for a lower degree of the offense than that charged in the information, a charge defining other degrees should not be given.   If we concede that these authorities state the correct general rule, they do not help appellant, because there was evidence of deliberation and premeditation.   A charge of murder in the first degree contains all the elements or facts constituting murder in the second degree.   The only difference, under the statute, between murder in the first degree and second degree is that in the former there must be deliberate and premeditated malice, while in the latter the killing must be done purposely and maliciously, but without deliberation and premeditation.   The proof of deliberation and premeditation may, and frequently does, flow from the same circumstances as those which denote intent and malice, but one does not necessarily follow from the other.   Where there are facts or circumstances from which intent and malice or deliberation and premeditation may be found, it is always the

duty of the court to submit such facts and circumstances to the consideration of the jury under proper instructions. We have seen above there were facts and circumstances from which the jury may have found all the elements of murder in the first degree, and the evidence was sufficient to support such a verdict. It follows that there is sufficient to support one in a lesser degree. Furthermore, the question under consideration was, we think, settled in *State v. Greer*, 11 Wash. 244, 39 Pac. 874, and *State v. Howard*, 33 Wash. 250, 74 Pac. 382. Questions of fact are purely questions for the jury. Judges may not draw conclusions of facts from other facts or circumstances. They must declare the law and not comment on the facts. Const., art. 4, § 16. If murder be charged, and the defendant plead guilty thereto, a jury must be impaneled to hear testimony and determine the degree thereof. § 6907, Bal. Code. From these sections we think it clear that the jury, and not the court, must determine the degree of murder of which a defendant is guilty.

(4.) When Dr. Powell, a witness on behalf of the defense, was on the stand, he was asked the following questions:

"Q. If an examination was held upon a body for the purpose of ascertaining the cause of death, is it not necessary to take notes of the different steps, to measure the parts examined, and, in a case where drowning is suspected, to examine microscopically the contents of the lungs and stomach, to examine the brain, and all parts of the body, before coming to a conclusion, and particularly where a man's life is at stake, or murder is suspected? A. It certainly was. Q. Now, in an examination such as this one was, where the brain is not examined, the contents of the lungs are not microscopically treated, no test is made to see what the fluid in the lungs and stomach is, would you say that was a sufficient and thorough examination on which to base a conclusion as to the cause of death?"

An objection was sustained to this last question, on the ground that it called for a conclusion which the jury must draw. Other questions of this same kind were asked of other witnesses, and objections sustained thereto. These rulings are assigned as error. We think there was no reversible error in this, and that the position of counsel for respondent is correct where he says:

"The evidence was before the jury as to how the examination of the body of the child had been conducted. The previous question asked and answered by Dr. Powell indicated his idea of the requisites of such an examination, and the jury were required to judge whether the examination was conducted properly. Although great latitude is allowed in the examination of experts, it would seem wholly unnecessary for them, in a case like this, to characterize an examination in answer to a hypothetical question, especially when they had already detailed how such an examination should be conducted and what should be done."

The ruling of the court excluded no evidence which was not in fact before the jury.

A number of physicians were called as expert witnesses by the state, and to each of these witnesses the prosecuting attorney propounded a hypothetical question for the purpose of obtaining an opinion as to the cause of the child's death. A sample of these questions is as follows:

"I will ask you, doctor, to suppose the case of a child three weeks old, or thereabouts, was ordinarily healthy, was apparently well, was in its mother's arms at about nine o'clock on Saturday evening, and a little after, on the following Sunday morning at about 6:30 o'clock or thereabouts, the same child was found in a sack inclosed with a stone weighing about ten pounds, the child itself weighing between seven and eight pounds in life or immediately after death. The waters ebbed and flowed at the spot where the body of the child was found, to a depth of from three to five feet at high tide. The child was securely inclosed in the sack by a string tied around the top of the

sack or bag.  When removed from the sack a frothy foam was found in the nostrils and round about the mouth, and some milk curds were found in the back part of the mouth. The hands were rigid and closed or clenched.  The left hand was clasped, or grasping the garment, that was upon the arm, by the fingers resting against the palm of the hand.  The child was removed from the sack and its clothing removed, and a post mortem was held the following day.  Whereupon the sternum was removed, and it was found that the walls of the chest were expanded, and the lungs filled the cavity of the chest so that some pressure was exercised against the under side of the sternum or breast bone.  The right side of the heart was gorged with blood.  There was also some blood in the left side of the heart.  The veins throughout were gorged with blood.  The arteries were only slightly filled.  The stomach was well filled, or contained a watery fluid or milk curds.  The lungs were removed and slight incisions made in the outer surface of the different lobes at different places.  Immediately after the incisions were made a watery fluid would come from the outer surface of the lungs.  Upon squeezing the nose a foam or froth would come from the nostrils. The child was dead when found.  In your opinion, if you could form an opinion from these facts, what was the cause of the death of that child ?"

These questions were objected to upon the ground that they assumed facts which were not established by the evidence, and included certain facts concerning which the state's own witnesses were contradictory, and that these questions, when the statements of the witnesses are conflicting, should state the facts most favorably to, the opposing party, and not most favorably to the party propounding the question.  It is true that some of the witnesses for the state were not entirely agreed as to the symptoms and conditions of the child when it was taken from the sack and examined.  But all the conditions named in the hypothetical questions were testified to by different witnesses,

and were, therefore, facts which the jury had a right to find and consider. We think the rule is fairly well settled that, where the facts are in dispute, it is sufficient if a hypothetical question fairly states such facts as present the examiner's theory of the case. *Stearns v. Field*, 90 N. Y. 640; *Cowley v. People*, 83 N. Y.464, 38 Am. Rep. 464; *People v. Sessions*, 58 Mich. 594, 26 N. W. 291; *Nave v. Tucker*, 70 Ind. 15. It is for the jury to determine whether the facts stated in such questions are true or proven, and, if they are not true or not proven, it is the duty of the jury to entirely disregard opinions based thereon. The jury were so instructed in this case. There was no error in the ruling.

Error is assigned upon the refusal of the court to give an instruction requested relating to the good character of the defendant. This instruction is quite long and involved, but the substance of it is that, where a character witness testifies that he knows the defendant and his associates in the community in which he lives, and that he has never heard defendant's character called in question, such character is good. This is no doubt the law, and in a proper case should be given. In this case several witnesses stated that they had known defendant for a long time, and knew his associates, and that his reputation was good because his character had never been questioned. This evidence was submitted to the jury, and, so far as the record shows, there is nothing to indicate that the prosecution questioned that it was the best evidence of good character. Not being questioned, and the court having submitted it to the jury and said to them that evidence of previous good character is competent, as tending to show that a defendant would not be likely to commit the crime charged, if they found that defendant had borne a good character among his neighbors and acquaintances, after the jury had considered all

the evidence, including that bearing upon his previous good character, or if they entertained a reasonable doubt, they should acquit him. We think this was sufficient, and, under the circumstances, it was not error to refuse the instruction requested.

Appellant argues that two other instructions are erroneous. These two instructions tell the jury that, if they find certain enumerated facts to be true, "then their verdict should be guilty of murder in the first degree," etc. It is argued that these two instructions are inconsistent with the facts, not supported by the evidence, and inconsistent with the theories of both plaintiff and defendant. We do not think these criticisms are well founded in fact. But even if they are, they cannot avail appellant here. The jury found the defendant guilty of murder in the second degree, which was an acquittal of the higher degree. No possible injury, therefore, could have resulted to the appellant from giving these two instructions.

(5)  Appellant argues that the court erred in refusing to grant a new trial, first, upon the misconduct of the jury. It appears that a juror by the name of Warson, upon his *voir dire* examination, qualified himself as a juror and was permitted to remain upon the jury. After a verdict had been rendered, the appellant filed four affidavits, in which it was stated, that the affiants in all of them were members of a jury in a case on trial in another department of the superior court of King county, on September 22, 1902, while a jury was being obtained in this case; that said jury was out all night on said night, considering their verdict; that said juror Warson was also a member of said jury, and out all night with affiants; that during the night of the 22d of September, 1902, the jurors generally talked over the facts in the Underwood case, and generally and freely expressed their opinions respecting the defendant

Underwood for the killing of his child; that juror Warson participated therein, and expressed his opinion to such an extent that affiants were surprised when they learned that he had qualified as a juror in the case. One of these affiants also stated that in a conversation with Warson some three or four days prior to the 22d of September, when he said to Warson that he could not qualify as a juror in the Underwood case, Warson replied, "Well, I think I will qualify." Another of the affiants by the name of Watton stated that, on the night of September 22, Warson said to him that he (Warson) had read all about the killing of the Underwood child by the defendants, "that his mind was made up concerning the defendant's guilt, and all hell could not change it."

In answer to these affidavits Mr. Warson denied that he made any of the statements attributed to him, denied that he was acquainted with or knew the affiant Watton, or had ever had any conversation with him about the Underwood case, and denied that he heard any of the discussion or opinions concerning the Underwood case by any of the jurors on the night of September 22, or at any other time, or that he was in any way biased, but alleged that he was entirely qualified as a juror on the case. Another juror, who was out with Mr. Warson on the said jury during the night of September 22, testifies that there was no discussion of the Underwood case in his presence that night, or in the presence of Warson to his knowledge, and he also testifies that he was closely associated with Warson on that night, and that, if Warson had expressed any opinion, he would have known it. Three other influential business men make affidavit to the fact that they are intimately acquainted with Warson, and had associated with him just previous to the trial of the Underwood case, and that, if said Warson had been biased in any way in the case, or had

an opinion, they would have known it; that they believed he had no opinion, and believed him to be a fair, impartial juror, unprejudiced in the case.

Appellant was no doubt entitled to a fair and impartial jury, and, if one of the jurors had made the statements above referred to, and had then wilfully qualified himself to sit on the jury, this would have been such misconduct as to give the appellant a new trial. It of course devolved upon the appellant to show the fact of misconduct, or at least to create in the mind of the court a well grounded suspicion that the fact may be true. The counter affidavits evidently convinced the lower court, as they convince us, that the charge was mistakenly or wrongfully made. We have gone carefully over all these affidavits, and it seems to us therefrom that the charge was entirely overcome by the answering affidavits on file.

It is finally argued that the court erred in denying a new trial on the ground of newly discovered evidence. This evidence consists, it is claimed, of a photograph of the dead child taken before the post mortem examination was held, which picture shows the open hand and closed eyes of the child; and also consists of the evidence of the undertaker Whitlock, to the effect that when he took the child out of the sack its eyes were closed and its hands were open. It was one of the main contentions of the appellant that closed eyes and open hands were symptoms of death by chloroform, and opposed to death by drowning. Much of the evidence for the ten days during which the trial lasted was devoted to this question. In other words, this evidence is wholly cumulative. The witness Whitlock was upon the witness stand and could have been examined upon these points if appellant had desired to do so. But, upon the ground that the evidence is cumulative, we think the lower court was justified in denying the motion.

Upon the whole record we are satisfied that the defendant had a fair trial, and that no substantial errors to his prejudice were made. The judgment is therefore affirmed.

FULLERTON, C. J., and HADLEY, ANDERS, and DUNBAR, JJ., concur.