[No. 9786.  Department One.  January 10, 1912.]

THE STATE OF WASHINGTON, *Respondent*, v.
ANTONIO MORETTI, *Appellant*.[1]

NEW TRIAL—MISCONDUCT OF JURY—EVIDENCE—REVIEW.  The denial of a new trial for misconduct of a juror is warranted, although four witnesses testified that the juror stated that he would hang the defendant if called as a juror, where the juror and one witness contradicted their testimony, the juror claiming that the conversation related to another crime.

HOMICIDE—JUSTIFIABLE HOMICIDE—DEFENSE OF DURESS—INSTRUCTIONS—KILLING IN COMMISSION OF ROBBERY.  Upon the defense that accused participated in a robbery because of duress, it is not error to instruct that, on a resulting murder, there was no question of justifiable or excusable homicide, where the accused had participated in the robbery and the victim was murdered by a confederate in committing the robbery; in view of Rem. & Bal. Code, § 2392, subd. 3, defining murder in the first degree as a killing without design to effect death by a person engaged in the commission of a robbery etc.

Appeal from a judgment of the superior court for Adams county, Holcomb, J., entered April 27, 1911, upon a trial and conviction of murder in the first degree.  Affirmed.

*John King*, for appellant.
*John Truax*, for respondent.

PARKER, J.—This defendant, Antonio Moretti, and three others, all Italians, were jointly charged, by information filed in the superior court for Adams county, with the crime of murder in the first degree, committed by shooting one Antonio Colucci, on December 18, 1910, near Lind, in Adams county.  The defendants were all charged as principals without any distinction.  Moretti was awarded a separate trial, which resulted in his conviction, as charged, upon which he was sentenced to be hanged.  From this conviction and sentence, he has appealed.

[1] Reported in 120 Pac. 102.

It is first contended by counsel for appellant that the trial court erred in refusing to grant a new trial upon the ground of misconduct of one of the jurors. The motion was based upon the alleged declaration of the juror, made after he had been summoned to serve for the term at which the case was to be tried, and a short time before he was called to serve as a juror in the trial of the case. The declaration alleged to have been made by the juror was, in substance, that if he were on the jury he would hang the defendants, referring to them as "dagoes." The different witnesses whose affidavits are relied upon in the appellant's behalf gave slightly different versions of the language of the alleged declaration. Thereafter the juror qualified as such, and clearly indicated by answers to questions put to him upon his *voir dire* examination, that he had no prejudice against appellant. He was thereupon sworn as a juror in the case and thereafter joined in the verdict against appellant. There were four affidavits of different persons filed in support of this motion. Three of these persons claimed to have heard the declaration made by the juror. The other, being the attorney for the appellant, stated in his affidavit, upon information and belief, that another person, naming him, heard the declaration of the juror; that he would not make an affidavit to that effect when requested to do so, but told affiant that if he was subpoenaed he would so testify. Affiant then concludes his affidavit by asking that a subpoena issue for this witness. Whether or not such subpoena was issued, and what action the court took upon this request, the record does not show. In any event, the testimony of the witness does not appear in this record. However, for argument's sake, we will assume that we have here the affidavits of four witnesses stating in substance that they all heard the alleged declaration of the juror. This will be giving the appellant all the benefits he would have if the affidavit of the fourth witness were here stating in substance the same as the other three.

The making of any such declaration is positively denied by the affidavit of the juror, and also by the affidavit of another witness, who states that he was present and heard all of the conversation in which the declaration is claimed to have been made. The juror and this witness also state in their affidavits that the conversation in which the alleged declaration occurred had no relation whatever to these defendants; but that there was mention made there of a homicide trial which occurred some time before, and about which opinions were expressed as to the justness of the verdict therein. It is apparent that there is nothing here involved except a question of fact. We think the learned trial court was fully warranted in believing that the charge against the juror was mistakenly or wrongfully made. This case is much like that of *State v. Underwood,* 35 Wash. 558, 77 Pac. 863, and we think presents no better reasons for a reversal upon the ground of this juror's misconduct than appeared in that case. This view finds support in the following decisions: *Gilleland v. State,* 44 Tex. 356; *Smith v. State,* 5 Okl. Cr. 282, 114 Pac. 350.

It is next contended in behalf of appellant that the trial court erred in excluding from the consideration of the jury appellant's claim that he participated in the robbery, resulting in Colucci's death, because of duress. The court's ruling upon this question is contained in certain instructions to the jury stating, in substance, that there was no question in the case of justifiable or excusable homicide, within the legal definition of those terms. Appellant's claim of duress is based upon the testimony of himself and another witness to the effect that, a day or two before the killing of Colucci, one of the defendants at Spokane threatened to kill appellant if he did not go along and help to rob Colucci. Appellant's own testimony renders it plain that he did go from Spokane to Lind on Saturday night, December 17, with the other defendants for the express purpose of robbing Colucci on Sunday morning, December 18,

at a place on the track of the Northern Pacific Railway Company some distance west of Lind, where they knew he would pass while on duty as a track walker for that company; that the robbery was committed at that place as planned by appellant and the others; that one of the other defendants shot and killed Colucci while in the act of robbing him; that a considerable sum of money was then taken from the person of Colucci and very soon thereafter divided among the four, while they were fleeing from the place, appellant receiving $55 as his share. The evidence shows that appellant did not actually do the shooting of Colucci nor assist in actually taking the money from his person, but that he laid in wait and watched for the coming of Colucci a short distance away from the others. He contends that he only assisted in the robbing of Colucci; that he was not responsible for the killing of Colucci, and therefore had a right to have the question of his duress submitted to the jury, the argument of his counsel being that duress is a defense to the crime of robbery, which is the only crime appellant participated in. This contention is rested upon Rem. & Bal. Code, § 2256, which provides:

"Whenever any crime, except murder, is committed or participated in by two or more persons, any one of whom participates only under compulsion by another engaged therein, who by threats creates a reasonable apprehension in the mind of such participator that in case of refusal he is liable to instant death or grievous bodily harm, such threats and apprehension constitute duress, which will excuse such participator from criminal prosecution."

We are quite unable to understand how this section gives appellant any right to invoke the defense of duress in this case. He would be guilty of murder under the undisputed facts of this case even though he did not have a specific intent to kill Colucci, since he had the intent to rob Colucci, and the killing occurred by one of his confederates while in the very act of the robbery. Indeed the evidence is conclusive that the money was taken from the person of Colucci

immediately after he had been shot. Rem. & Bal. Code, § 2392, defines murder in the first degree as follows:

"The killing of a human being, unless it is excusable or justifiable, is murder in the first degree when committed either— (1) With a premeditated design to effect the death of the person killed, or of another; or (2) By an act imminently dangerous to others and evincing a depraved mind, regardless of human life, without a premeditated design to effect the death of any individual; or (3) Without a design to effect death, by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of a robbery, rape, burglary, larceny or arson in the first degree; or (4) By maliciously interfering or tampering with or obstructing any switch, frog, rail, roadbed, sleeper, viaduct, bridge, trestle, culvert, embankment, structure or appliance pertaining to or connected with any railway, or any engine, motor or car of such railway. . . ."

It is clear that, under subdivision three of this section, it is not necessary that there should be a specific intent to kill to constitute murder when there is an intent to commit robbery and the killing occurs in the commission of such intended robbery, by the person engaged therein.

In the case of *State v. Brown*, 7 Ore. 186, the supreme court of that state held that, in such a case, the purpose to kill is incontrovertibly implied from the crime in which the person committing the homicide is engaged at the time. That appellant participated in this robbery, in the eyes of the law, is shown by his own testimony. As to that crime, he is in the same situation as if he had physically done every act constituting that robbery. It follows, that since the killing of Colucci was committed by one of appellant's confederates while in the act of committing the robbery, appellant is as much responsible for the killing as he is for the robbery. By the very terms of § 2256, above quoted, this excludes the defense of duress. It might well be argued that, even if the duress mentioned in § 2256 were available to appellant in this case, he has not offered any evidence of reasonable apprehension of his liability to "instant death,"

such as is contemplated by that section, in view of the fact that all of the evidence of threats claimed as duress relates to threats made at least one whole day before the commission of the robbery, and there was no evidence as to when the threats might be carried into execution. We express no opinion on this question, however.

These are all of the errors claimed or argued by counsel for appellant. A review of the entire record convinces us that appellant had a fair trial, which was free from prejudicial error, and that there was abundant evidence to support his conviction. It is not a pleasant duty to have to write the last word in affirmance of a death sentence; but such is the means provided by the law of the land for the protection of society against crime of this nature. Whether or not it is the wisest and best means available to that end, is not within our province to decide. The facts shown by the record in this case, and the law applicable thereto, compels the affirmance of appellant's conviction. The judgment of the learned trial court is affirmed.

DUNBAR, C. J., MOUNT, FULLERTON, and GOSE, JJ., concur.