[No. 15195. Department One. August 5, 1919.]

## Dora C. Bundy, *Respondent*, v. B. L. Dickinson, *Appellant*.[1]

Parties (1)—Capacity to Sue—Marriage. A divorced woman had legal capacity to sue for breach of promise where the complaint alleged that she was unmarried at all times mentioned in the complaint.

Abatement and Revival (10)—Another Action Pending—Dismissal. Where a former action for breach of promise based on a prior promise was dismissed by stipulation although defendant withheld the stipulation from the files, its pendency cannot be pleaded in bar of a subsequent action based upon a promise made after the settlement of the first action.

Release (7)—Pleading. A release relied upon in an action for breach of promise must be affirmatively pleaded as a defense.

Appeal (456)—Harmless Error—Admission of Evidence—Cure by Instructions. In an action for breach of promise, error in receiving evidence of prior promises made while plaintiff was a married woman is cured by instructions that, to recover, plaintiff must show the promise relied upon after she obtained her divorce.

Breach of Marriage Promise (7)—Damages—Amount. Thirty thousand dollars for breach of promise cannot be said to be excessive, where defendant admitted that he was worth $90,000, especially where he made accusations against the chastity and good character of the plaintiff.

New Trial (35) — Newly Discovered Evidence — Materiality — Diligence. A new trial for newly discovered evidence is properly denied where it would not likely affect the result, and no effort had been made to secure the evidence although it was known to counsel that the witness might have knowledge of the facts.

Same (49)—Misconduct of Jury. The denial of a new trial for misconduct of the jurors will not be disturbed where there were counter affidavits as to the credibility of certain affiants which were passed upon below.

Same (32)—Absence of Witness—Diligence. A party cannot complain of being deprived of a subpoenaed witness who departed before testifying, where there was no diligence to secure his attendance.

[1]Reported in 182 Pac. 947.

Appeal from a judgment of the superior court for Columbia county, Miller, J., entered June 1, 1918, upon the verdict of a jury rendered in favor of the plaintiff, in an action for a breach of promise. Affirmed.

*J. L. Wallace* and *J. W. Brooks*, for appellant.

*Geo. H. Rummens* and *Leon B. Kenworthy*, for respondent.

HOLCOMB, C. J.—This is an action for damages for an alleged breach of promise of marriage. Defendant's demurrer being overruled, he answered, denying all material allegations, whereupon the cause was tried to the court and a jury, resulting in a verdict of $30,000 in favor of plaintiff. Defendant unsuccessfully moved for a new trial, and from judgment entered on the verdict, he appeals.

It appears from the evidence that respondent, who obtained a divorce from Fred Bundy on September 30, 1916, was employed as a cook on the farm of appellant's son during the summer of 1915. The relations between appellant and respondent at once became very intimate, appellant frequently calling on respondent and automobiling with her. This intimacy was marred by respondent's commencing an action in July, 1917. against appellant for breach of promise of marriage. An amicable settlement was effected between the parties; respondent, on September 6, 1917, delivering to appellant a release directing dismissal of her case. At the same time, appellant voluntarily gave respondent, in his own handwriting and over his own signature, a testimonial as to her good character and his own high respect and regard for her. No order of dismissal was entered, appellant, having it in his keeping and control, never having filed the release; but neither did he answer or file any pleading. Thereupon, to all out-

ward appearances, the "entente cordiale" was re-
stored. Another "era of good feeling" was ushered
in, and the parties again enjoyed each other's society.
Appellant asserts that the holy influence of mutual
affection was never present during the alleged court-
ship. Respondent began to complain of neglect, but
her complaints of inattention and failure to visit her
were met with excuses of other engagements which pre-
cluded appellant's presence. The relations culminated
in commencement, December 29, 1917, of the present
action, based upon a promise of marriage made on or
about, and frequently renewed after, September 6,
1917, and resulted as heretofore stated.

Appellant makes numerous assignments of error.
His demurrer was properly overruled. The court had
jurisdiction of the subject-matter and parties, there
being no irregularity in the filing of the complaint and
the appearance of appellant being general. Respond-
ent, by reason of the fact, as alleged by her, that she
was unmarried at all times mentioned in her complaint,
had legal capacity to sue. As to the other subdivision
of the demurrer, that another action was pending for
the same cause, it is sufficient to say that there is noth-
ing in the record to indicate such fact. The parties
treated the prior action as dismissed, appellant obtain-
ing a release directing dismissal of the action com-
menced in July, 1917, but he withhheld it from the
files, and the present action was instituted December
29, 1917, based upon a promise made in September,
1917. If he relied on this release, same should have
been pleaded as an affirmative defense. 4 R. C. L. 165.

Appellant next complains that the trial judge erred
in admitting certain evidence and rejecting other evi-
dence; in giving improper instructions to the jury, and
in refusing to give requested instructions.

Respondent was permitted to testify as to promises of marriage claimed to have been made while she was still a married woman, while her action is founded on an alleged promise subsequent to the time she obtained a divorce.

"The fact that appellant was under a legal disability to make a valid promise of marriage before her divorce, did not disqualify her from making an effective contract after the disability was removed. With mere ethical views as to the former agreement we have nothing to do. We are to determine the controversy here strictly upon the legal rights of the parties as they are made to appear since the time of that first agreement." *Leaman v. Thompson,* 43 Wash. 579, 86 Pac. 926.

Appellant will not now he heard to complain. He chiefly endeavored to justify his conduct by showing immorality of respondent dating from the time she was employed by his son, and the error, if any, was cured by the court instructing the jury that, in order for respondent to recover, she must show that the promise relied upon in this suit was made subsequent to the commencement of the prior action and on or about or subsequent to September 6, 1917. The verdict of the jury is conclusive as to the contention of the respondent that, on or about September 6, 1917, she and appellant made a mutual promise of marriage and that appellant breached same. Both parties were in the presence of the jury, and it was their privilege to observe the demeanor of the parties and give such credit to their testimony as they deemed it deserved. Appellant testified concerning his relations with respondent from the summer of 1915 until immediately preceding commencement of this action. His explanation of constant association with respondent was a recital of a course of illicit conduct. He denied that love impelled them to seek the society of each other,

and instead of being gentlemanly mendacious or discreetly silent when a woman's reputation was at stake, he, with surprising effrontery, testified that they were incited solely by concupiscence and mutually agreed that marriage was not to be considered by them. Admitting frequent compunctive visits because of his misbehavior, nevertheless, he asserted, he continued his libidinous course of conduct with her. His assertions as to such conduct, at least prior to September 6, 1917, are belied by his written testimonial heretofore noticed.

Appellant also insists that the evidence in the case does not justify a verdict in favor of the respondent in the sum of $30,000 and that it evidences on its face that the jury was influenced by passion and prejudice.

"The text writers and authorities agree with a unanimity of opinion rarely found in the books that, in cases of breach of promise, seduction, criminal conversation, and the like, evidence of wealth is admissible as tending to show the value of that which the plaintiff would have secured by a consummation or performance of defendant's promise." *Larson v. McMillan,* 99 Wash. 626, 170 Pac. 324.

See, also, 4 R. C. L. 155-157.

This being so, appellant admitting that he was worth $90,000, and the jury being properly instructed as to this phase of the case, under all the circumstances and conditions shown in this action, including the nature of appellant's accusations and imputations against the chastity and good character of respondent, we cannot conclude that the verdict, although very substantial and probably larger than any of us would award as jurors, indicates passion and prejudice against appellant, or aught else than consideration of compensation such as the law sustains. *Kelly v. Navy Yard Route,* 77 Wash. 148, 137 Pac. 444.

We have read the entire record with much care, and not only have we been unable to find any erroneous prejudicial rulings on the admissibility of evidence, but it is our conclusion that the evidence admitted amply sustains the verdict of the jury. The requested instructions were properly rejected. Neither do we find any merit in the assignment that the court erred in giving other instructions. We are convinced that the trial judge carefully submitted to the jury all the issues raised by the pleadings of both parties, in accordance with the law.

A question is raised as to newly discovered evidence, upon the motion for new trial, of a witness named Millie Prater. In view of the nature of the evidence discovered and its controversion by respondent, and a showing as to the age and infirmity of the proposed witness, it cannot be presumed that the newly discovered evidence would affect the verdict. Moreover, the fact was known to one of counsel for appellant that the proposed witness might have knowledge of facts material to the defense prior to the commencement of the trial, and that she was then at a place in Montana not more than five hundred miles from the place of trial, and no effort was made to procure the attendance or deposition then or during the trial, or a showing for continuance on account of such witness; hence this cannot justly be considered newly discovered evidence. The trial court did not abuse its discretion in denying a new trial on that account.

A juror is sought to be impeached as to bias by affidavits as to statements tending to show prejudice on his part against appellant. Controverting affidavits denying such statements, and other counter affidavits as to the credibility of certain of affiants making affidavits for appellant, were filed and passed upon by the court. This matter is governed by our decision in

*State v. Underwood,* 35 Wash. 558, 77 Pac. 863, and *State v. Moretti,* 66 Wash. 537, 120 Pac. 102.

A witness named Tingley, subpoenaed by appellant, departed before testifying. It affirmatively appears that appellant did not use proper diligence to secure his apprehension, and cannot now complain of being deprived of his evidence.

Finding no error, we are compelled to affirm the judgment. It is so ordered.

TOLMAN, MACKINTOSH, MITCHELL, and MAIN, JJ., concur.