[No. 26180-4-II. Division Two. June 21, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. CHRISTINA ANN MANNERING, *Appellant*.

*Robert M. Quillian,* for appellant (appointed counsel for appeal).

*Edward G. Holm, Prosecuting Attorney,* and *Steven C. Sherman, Deputy,* for respondent.

HOUGHTON, J. — Christina Ann Mannering appeals from her convictions of attempted first degree murder while armed with a deadly weapon and first degree burglary while armed with a deadly weapon. She argues that the trial court erred in precluding her from asserting a duress defense and that she received ineffective assistance of counsel. We affirm.

## FACTS

In April 1999, Mannering and Bill Ulery were in a romantic relationship. They had dated for about two months, but lived apart. Previously, Ulery had been in a relationship with Victorina Allie. At the time of the incident here, Allie was the alleged victim in Ulery's then-pending criminal charge for domestic violence fourth degree assault.

According to Mannering, Ulery told her that he wanted Allie dead and asked her to kill Allie for him. Ulery also threatened to kill Mannering if she did not do so. The two devised with a plan for Mannering to kill Allie using a knife that Ulery provided. On the day of the incident, they drove

past Allie's house so Ulery could show Mannering where Allie lived. Ulery also described Allie. Finally, they planned to clean the inside of Mannering's car in the event there was any blood after the incident.

At approximately 7:45 P.M. on April 4, 1999, Allie was watching television in her home when she heard someone knock on her front door. She went to the door and asked who it was. The person on the other side said, "Christina." Report of Proceedings at 55. Thinking that it was a neighbor she knew, Allie cracked open her door. Mannering, whom Allie had never met, pushed the door open and entered Allie's home, wielding a knife with a five-inch blade. Mannering attacked Allie by trying to grab her throat and swinging the knife. Allie fended off the attack and wrested the knife from Mannering, but she received a cut on her left wrist.

Allie had never met Mannering and wanted to know why she was there. Mannering stated that she was there because of Ulery. She then ran out of Allie's house and fled in her car. A witness saw Mannering and Allie run out of Allie's house and heard Allie yelling. He called 911 dispatch.

Detective Glenn Quantz from the Thurston County Sheriff's Office handled the criminal investigation. A deputy sheriff obtained Mannering's address from a car dealer. The sheriff tried to contact Mannering at her home. Four days after the incident, Mannering responded to a message that the sheriff left at her house and contacted Detective Quantz. She agreed to be questioned. During the four-day interval, Mannering was with Ulery and accompanied him on several trips out of town.

At the sheriff's office, Detective Quantz advised Mannering of her *Miranda*[1] rights. Mannering waived her rights and confessed that she went to Allie's home with the

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) (before a custodial interrogation takes place, the police must warn the person of the right to remain silent, that any statement may be used as evidence against the person and that the person has a right to have an attorney).

intention of killing her. She then gave a tape-recorded statement in which she implicated herself and Ulery in planning Allie's murder.[2] She also agreed to help the police by setting up a meeting with Ulery and wearing a body wire to tape-record their conversations.

Mannering and Ulery were arrested and charged with attempted first degree murder.[3] Mannering was also charged with first degree burglary. The State further alleged that she was armed with a deadly weapon during the commission of both crimes.

At trial, Mannering testified that Ulery physically abused her and threatened to kill her if she did not kill Allie for him. But she did not present any evidence to corroborate this claim and further admitted that she did not tell Detective Quantz this during the tape-recorded interview.

Before trial, Mannering informed the State that she was relying on general denial and asserting the affirmative defense of duress to both charges. The State moved in limine to preclude Mannering from asserting duress as a defense to the charge of attempted first degree murder. The trial court granted the State's motion, but it reserved ruling on whether it was available as a defense to uncharged lesser included offenses. After the State presented Detective Quantz' testimony, Mannering withdrew her duress defense to both the attempted first degree murder and first degree burglary charges.

The jury found Mannering guilty of both charges and she appeals.

---

[2] Mannering waived her rights to CrR 3.5 and CrR 3.6 hearings and stipulated to the admissibility of all her tape-recorded statements and the State's physical evidence.

[3] Ulery was later convicted in a separate trial during which Mannering testified for the State.

## ANALYSIS

### The Duress Defense

Mannering contends that the trial court erred in ruling that duress was not a defense to a charge of attempted first degree murder. She argues that the duress statute is unambiguous and clear because it explicitly precludes duress as a defense only if the charged offense is murder or manslaughter, but it is available for any other charged offense, including attempted murder.

 In this case of first impression, we begin our analysis using general rules of statutory construction. A court's paramount duty in construing a statute is to ascertain and give effect to the Legislature's intent. *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992). We give words used in the statute their plain meaning, but we construe the statute to effect its purpose and avoid "[u]nlikely, absurd or strained consequences resulting from a literal reading." *State v. McDougal*, 120 Wn.2d 334, 350, 841 P.2d 1232 (1992) (citing *State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990)). The statute's purpose prevails over its " 'express but inept wording.' " *Elgin*, 118 Wn.2d at 555 (quoting *State v. Day*, 96 Wn.2d 646, 648, 638 P.2d 546 (1981)).

The duress statute provided in pertinent part:

(1) In any prosecution for a crime, it is a defense that:

(a) The actor participated in the crime under compulsion by another who by threat or use of force created an apprehension in the mind of the actor that in case of refusal he or another would be liable to immediate death or immediate grievous bodily injury; and

(b) That such apprehension was reasonable upon the part of the actor; and

(c) That the actor would not have participated in the crime except for the duress involved.

(2) The defense of duress is not available if the crime charged is murder or manslaughter.

Former RCW 9A.16.060 (1975).[4]

Although the statute explicitly excludes duress as a defense to murder and manslaughter, it is silent on attempted murder. Mannering argues that this silence indicates a clear legislative intent that duress is available as a defense to attempted murder.

In Washington, attempted murder is not a specifically enumerated crime. Attempted murder is a combination of two criminal statutes: murder and criminal attempt. First degree murder is the killing of one person by another person with premeditation, or while engaging in conduct manifesting an extreme indifference to human life, or during the commission of, or immediate flight from, certain serious felonies.[5] Second degree murder is the killing of one person by another person without premeditation but with the intent to kill that person, or the killing of another person during the commission of, or immediate flight from, any felony not enumerated in the first degree murder statute.[6]

---

[4] In 1999, the Legislature amended the statute, adding that duress is not available as a defense to a charge of homicide by abuse. LAWS OF 1999, ch. 60, § 1. This amendment does not affect our analysis here.

[5] RCW 9A.32.030(1) provides in part that a person is guilty of first degree murder when:

(a) With a premeditated intent to cause the death of another person, he or she causes the death of such person or of a third person; or

(b) Under circumstances manifesting an extreme indifference to human life, he or she engages in conduct which creates a grave risk of death to any person, and thereby causes the death of a person; or

(c) He or she commits or attempts to commit the crime of either (1) robbery in the first or second degree, (2) rape in the first or second degree, (3) burglary in the first degree, (4) arson in the first or second degree, or (5) kidnapping in the first or second degree, and in the course of or in furtherance of such crime or in immediate flight therefrom, he or she, or another participant, causes the death of a person other than one of the participants[.]

[6] RCW 9A.32.050(1) provides in part that a person commits second degree murder when:

(a) With intent to cause the death of another person but without premeditation, he causes the death of such person or of a third person; or

(b) He or she commits or attempts to commit any felony other than those enumerated in RCW 9A.32.030(1)(c), and, in the course of and in furtherance

■ The criminal attempt statute provides, in part, "A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1). Hence, the crime of attempt contains two elements: intent to commit the substantive crime and taking a substantial step in the commission of that crime. *State v. Chhom*, 128 Wn.2d 739, 742, 911 P.2d 1014 (1996). Consequently, attempted murder occurs when a person takes a substantial step in causing another's person's death with the intent to cause that person's death. *See State v. Smith*, 115 Wn.2d 775, 782, 801 P.2d 975 (1990).

At common law, duress was not a defense to murder. *See* 1 CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW § 52, at 342-45 (15th ed. 1993) ("[A] defendant is not allowed to take the life of an innocent third person even when he is ordered to do so under a threat of instant death. . . . '[H]e ought rather to die himself than escape by the murder of an innocent.' ") (quoting 4 WILLIAM BLACKSTONE, COMMENTARIES *30)); 40 AM. JUR. 2D *Homicide* § 115 (1999).

The concept of duress is premised on the notion that the actor should be excused for engaging in the criminal conduct because the actor chose the lesser of two evils confronting the actor. This premise falters when the actor takes the life of an innocent person because of a threat to his or her own life. This is because the actor cannot logically or morally demonstrate that the decision to kill the innocent person was the lesser of two evil choices. The innocent person's life is as worthy as the actor's life. *See United States v. LaFleur*, 971 F.2d 200, 205 (9th Cir. 1991) ("The choice of evils rationale necessarily presumes that the threatened harm to the defendant is greater than the resulting harm from the defendant's commission of the crime. When the defendant commits murder under duress, the resulting harm—i.e. the death of an innocent person—is at least as great as the threatened harm—i.e. the

---

of such crime or in immediate flight therefrom, he, or another participant, causes the death of a person other than one of the participants[.]

death of the defendant."); *see also Hunt v. State*, 753 So. 2d 609, 613 (Fla. Dist. Ct. App. 2000) (The " '[l]egal recognition of duress as a defense to crimes other than homicide necessarily assumes a working hypothesis that a harm or crime of greater magnitude is avoided when the subjected person succumbs to the duress. This hypothesis disappears when duress is sought to be invoked as a defense in a homicide case.' ") (quoting *Wright v. State*, 402 So. 2d 493, 498 (Fla. Dist. Ct. App. 1981)).

Washington codified this common law doctrine in 1909. Laws of 1909, ch. 249, § 4. This statute remained unchanged until 1975, when the Legislature revised it, adding manslaughter as a crime for which duress also was not a defense.[7] Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.16.060. It is indisputable that duress is not a defense to murder in Washington.[8] Former RCW 9A.16.060(2); *State v. Taylor*, 22 Wn. App. 308, 317, 589 P.2d 1250, *review denied*, 92 Wn.2d 1013 (1979).

■ We find no legislative history indicating whether the Legislature considered duress as a defense to a crime of attempted murder. Nevertheless, logic and the spirit of the statute lead us to hold that duress is not a defense to attempted murder. This is because both murder and attempted murder require the actor to have the specific intent of killing another person. By definition, murder is a crime with the specific intent of killing another person, with or without premeditation. Attempted murder is a crime with the specific intent to commit murder. A person cannot commit the crime of attempted murder without specifically intending to kill another person. *See State v. Dunbar*, 117 Wn.2d 587, 590, 817 P.2d 1360 (1991) (" '[A]ttempted mur-

---

[7] We review this 1975 version as it was in effect in April 1999. As noted, the duress statute has since been amended, effective July 1, 1999. *See supra* n.4.

[8] This also includes felony murder. *See State v. Ng*, 110 Wn.2d 32, 39, 750 P.2d 632 (1988) (defendant was not entitled to duress defense in felony murder prosecution where the underlying felony was first degree robbery, but the State did not object to duress instruction); *State v. Moretti*, 66 Wash. 537, 120 P. 102 (1912) (duress not a defense to felony murder where the defendant's confederate killed a person during the robbery).

der requires an intent to bring about that result described by the crime of murder (i.e., the death of another).' ") (quoting WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., CRIMINAL LAW § 6.2(c), at 500-01 (2d ed. 1986)).

In addition, attempted murder can be viewed as either an unsuccessful murder or a murder that has not happened (but where the defendant has taken the requisite substantial step).[9] In both scenarios, the primary difference between murder and attempted murder is the victim's condition. Thus, a person who commits attempted murder was willing to kill the victim but either was unsuccessful in the efforts or had taken a substantial step toward committing the act. In either situation, the actor specifically intended to kill another person and took steps to accomplish the desired result. Although the results vary greatly, the actor's lack of success to kill the victim does not diminish the act's reprehensibleness.

Thus, interpreting the duress statute to allow duress as a defense to attempted murder but not to murder, as Mannering suggests, would result in an absurd and strained interpretation. *McDougal*, 120 Wn.2d at 350. We decline to adopt such an interpretation. Because duress is not a defense to murder, it is also not a defense to attempted murder.

Affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder

---

[9] These are not the only two scenarios, because analytically, the elements of murder contain the elements of attempted murder. Thus, a person can be convicted of attempted murder even when he succeeds in killing his intended victim. *See State v. Rowe*, 60 Wn.2d 797, 798, 376 P.2d 446 (1962) (the crime of attempt covers both successful and unsuccessful efforts and is not premised on the failure to complete the intended crime); *State v. Lough*, 70 Wn. App. 302, 328 n.19, 853 P.2d 920 (1993), *aff'd*, 125 Wn.2d 847, 889 P.2d 487 (1995). But for purposes of our discussion, we assume that attempted murder occurs when the intended victim was not killed.

shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HUNT, C.J., and MORGAN, J., concur.

Review granted at 148 Wn.2d 1026 (2003).