[No. 51909-9. En Banc. February 18, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. WAI–CHIU TONY NG, *Appellant.*

*Mestel & Muenster,* by *John R. Muenster,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Robert S. Lasnik, Chief of Staff,* and *William L. Downing, Senior Deputy,* for respondent.

BRACHTENBACH, J.—Wai–Chiu "Tony" Ng appeals his conviction of 13 counts of first degree robbery and 1 count of second degree assault. He alleges that the trial court erred (1) in admitting his confession, (2) in instructing the jury, and (3) in denying his motion for new trial based on inconsistent verdicts.[1] We granted direct review and now affirm.

On February 19, 1983, 14 people were robbed and shot at the Wah Mee Club in Seattle's International District. Thirteen died. The lone survivor, Wai Yok Chin, identified two of the assailants by name and gave a description of a third. Subsequently, Benjamin Kin Ng and Kwan Fai "Willie" Mak were convicted of first degree aggravated murder. Benjamin Ng was sentenced to life without parole. Willie Mak received the death penalty. This court affirmed both sentences. *See State v. Ng,* 104 Wn.2d 763, 713 P.2d 63 (1985); *State v. Mak,* 105 Wn.2d 692, 718 P.2d 407, *cert. denied,* 479 U.S. 995, 93 L. Ed. 2d 599 (1986).

On March 30, 1983, after codefendant Willie Mak named appellant Wai–Chiu "Tony" Ng (no relation to Benjamin Ng) as the third participant, the King County prosecutor filed a complaint in Seattle District Court charging Ng with 13 counts of first degree aggravated murder and 1 count of first degree assault. Ng was placed on the FBI's "most wanted" list.

About 18 months later, while Seattle police officers and FBI agents were in Calgary, Alberta, Canada, to investigate a lead that Ng was living there, Canadian Police Sergeant Robert Newman arrested a "Jim Wong" for immigration violations. Suspecting that Wong was actually Tony Ng,

---

[1]Because Ng's arguments regarding the second degree assault charges are essentially the same as these made regarding the robbery charges we do not address them separately.

Sergeant Newman notified Seattle Police Lieutenant Robert Holter. Lieutenant Holter arrived at the police station and was introduced to the suspect. Immediately, Lieutenant Holter asked the suspect whether he was Wai–Chiu Tony Ng from Seattle and if his father's name was Shiu–Foo Ng. The suspect nodded "yes" to both inquiries.

Lieutenant Holter then informed Ng of his *Miranda* rights and asked Ng if he understood his rights. Ng replied that he understood. Holter also told Ng that he must be aware from the newspapers that Willie Mak had seriously implicated him in the Wah Mee robberies and killings and that he had caused his family a great deal of pain and suffering. Ng subsequently confessed to his participation in the robberies, but denied shooting anyone. After Lieutenant Holter prepared a written statement, he and Sergeant Newman signed it. Lieutenant Holter then read the statement aloud to Ng while Ng followed along. Ng signed each page, including a waiver of his rights.

After Canadian authorities returned Ng to Seattle, the King County prosecutor filed an information in superior court charging Ng with 13 counts of first degree felony murder and 1 count of first degree assault. Prior to trial, Ng moved to suppress his confession. The trial court denied his motion. At trial, survivor Wai Chin described the robbery and killings as he had in the prior Mak and Ng trials. The jury also heard Ng's confession. Ng testified that he had participated in the robberies and that he had been armed with a gun Mak had given to him. Ng also admitted he kept his share of the money stolen in the robberies. Ng denied using the gun, however. Ng further testified that he participated in the robberies only because Mak had threatened to kill him if he refused.

At Ng's request, the trial court instructed the jury on duress. The State did not object. The court's instruction 6, defining robbery, instructed the jury that robbery is not unlawful if it is "done under duress." Clerk's Papers, at 237. The court's "to convict" instruction on felony murder required the jury to find that Ng committed robbery "as

defined in Instruction #6", and that Ng or a participant in the robbery caused the particular victim's death. Clerk's Papers, at 238. The court's "to convict" instruction on first degree assault similarly required the jury to find that Ng "acted with the intent to commit the crime of robbery (as defined in Instruction #6)". Clerk's Papers, at 244. The instruction defining duress required the State to prove "the absence of duress beyond a reasonable doubt." Clerk's Papers, at 252.

The court also instructed the jury that it could find Ng guilty of first degree robbery as a lesser included offense to felony murder, or guilty of second degree assault as a lesser included offense to first degree assault. On the third day of deliberations the jury sent out a question to the court regarding its instructions: "Does the term duress apply to all lesser charges?" Clerk's Papers, at 276. In response, the court advised the jury to refer to the instructions as given.

Ultimately, the jury convicted Ng of the lesser included offenses: 13 counts of first degree robbery and 1 count of second degree assault. The court denied Ng's motion for new trial, and sentenced him to seven consecutive life terms for seven of the robberies. The court set the remaining six counts of robbery plus a 10-year sentence for second degree assault to run concurrently with one of the life terms. Ng appealed. We accepted direct review and affirm.

## I

Ng asserts that the trial court erred in admitting his confession. Ng contends that the trial court's error violated his rights under the fifth and sixth amendments to the United States Constitution and article 1, sections 3 and 9 of the state constitution.

Under the circumstances of this case, we do not address the constitutional issues raised by Ng's arguments because we conclude that any error regarding the trial court's admission of his confession is harmless beyond a reasonable doubt and therefore not reversible error. A reviewing court should not pass on constitutional matters

unless absolutely necessary to its determination of the case. *State v. Claborn,* 95 Wn.2d 629, 632, 628 P.2d 467 (1981); *Ohnstad v. Tacoma,* 64 Wn.2d 904, 907, 395 P.2d 97 (1964).

██ It is well established that constitutional errors may be so insignificant as to be harmless. *State v. Guloy,* 104 Wn.2d 412, 425, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020 (1986); *Harrington v. California,* 395 U.S. 250, 251–52, 23 L. Ed. 2d 284, 89 S. Ct. 1726 (1969); *Chapman v. California,* 386 U.S. 18, 21, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065, *reh'g denied,* 386 U.S. 987 (1967). "A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error." *Guloy,* at 425. We note that certain constitutional errors may never be harmless. *See Guloy,* at 431–32 (Brachtenbach, J., concurring). For example, the admission of an involuntary confession cannot constitute harmless error. *See Guloy,* at 432 (Brachtenbach, J., concurring); *see also Mincey v. Arizona,* 437 U.S. 385, 398, 57 L. Ed. 2d 290, 98 S. Ct. 2408 (1978); *Payne v. Arkansas,* 356 U.S. 560, 567–68, 2 L. Ed. 2d 975, 78 S. Ct. 844 (1958). However, in situations where a voluntary confession is erroneously admitted into evidence, its admission may constitute harmless error.

Here the trial court concluded that Ng's confession was voluntary. We agree. Where the record indicates there is substantial evidence from which the trial court could find by a preponderance of evidence that a confession was given voluntarily, the trial court's determination of voluntariness will not be disturbed on appeal. *State v. Woods,* 34 Wn. App. 750, 759, 665 P.2d 895 (1983); *State v. Snook,* 18 Wn. App. 339, 348, 567 P.2d 687 (1977). Ng concedes that he was advised of his *Miranda* rights and that he signed a written confession that stated it could later be used against him. Moreover, the record shows that Lieutenant Holter read Ng his *Miranda* rights in a slow, deliberate manner, unchallenged finding of fact 18, Clerk's Papers, at 359; that Ng indicated he understood his rights and desired to make

a statement about his role in the robbery and killings, unchallenged finding of fact 19, Clerk's Papers, at 359; and that Lieutenant Holter again read Ng his *Miranda* rights before Ng read and signed a written confession, unchallenged finding of fact 24, Clerk's Papers, at 360. We conclude that the record contains substantial evidence supporting the trial court's conclusion that Ng's confession was voluntary. We conclude that a harmless error analysis is appropriate.

This court employs an "overwhelming untainted evidence" test in its analysis of constitutional harmless error. *See State v. Guloy,* 104 Wn.2d at 426. Under this test, we look only at the untainted evidence to determine if the untainted evidence alone is so overwhelming that it necessarily leads to a finding of guilt. *Guloy,* at 426. Applying this test here, we are convinced beyond a doubt that the overwhelming untainted evidence present necessarily would have led the jury to find Ng guilty of first degree robbery and second degree assault. Ng testified at trial that he was present at the Wah Mee Club at the time of the crimes, Verbatim Report of Proceedings vol. 6, at 865–66; that he was armed with a gun, Verbatim Report of Proceedings vol. 6, at 858; that he tied several victims and took money from them, Verbatim Report of Proceedings vol. 6, at 869–70; that he then waited for Mak and Benjamin Ng, Verbatim Report of Proceedings vol. 6, at 877; and that he kept his portion of the money taken from the victims, Verbatim Report of Proceedings vol. 6, at 891–92. Together with Wai Chin's eyewitness testimony describing the crimes in a substantially similar way, Ng's in–court testimony alone provided overwhelming untainted evidence of his guilt. We conclude that even if the trial court erred in admitting Ng's confession, any error was harmless beyond a reasonable doubt.

## II

Next, Ng assigns error to several of the trial court's jury instructions regarding the defense of duress.

Initially, although both parties assume that duress is a defense to felony murder, in Washington, "[t]he defense of duress is not available if the crime charged is murder or manslaughter." RCW 9A.16.060(2). This rule applies regardless whether a defendant is charged with intentional or felony murder. *See State v. Moretti*, 66 Wash. 537, 120 P. 102 (1912). The defendant in *Moretti*, like Ng, was charged with felony murder in connection with a killing committed by coparticipants in a robbery. The defendant claimed he was compelled to participate in the robbery and thus was entitled to a jury instruction on duress because the defense is available in robbery cases. Relying on a predecessor to RCW 9A.16.060(2) which also made duress unavailable in murder cases, this court rejected his argument:

> That appellant participated in this robbery . . . is shown by his own testimony. . . . It follows, that since the killing . . . was committed by one of appellant's confederates while in the act of committing the robbery, appellant is as much responsible for the killing as he is for the robbery. By the very terms of [the duress statute] . . . this excludes the defense of duress.

*State v. Moretti, supra* at 541.

The Legislature, recognizing the harshness of this rule, has adopted a 4–part defense to felony murder. *See* RCW 9A.32.050(1)(b). Under this statutory defense, an accomplice to the underlying felony can avoid liability for the murder if he was unarmed and had no reasonable grounds to believe his coparticipants were armed. Because Ng was admittedly armed with a gun, however, he could not claim the statutory defense.

■ Nevertheless, because the State failed both at trial and on this appeal to challenge the applicability of the duress defense to felony murder the instructions, as given, are the law of the case and we will consider error predicated on them. *See State v. Berge*, 25 Wn. App. 433, 607 P.2d 1247 (1980); *State v. Swanson*, 16 Wn. App. 179, 187, 554

40

P.2d 364 (1976), *cert. denied,* 434 U.S. 967 (1977); *State v. Queen,* 73 Wn.2d 706, 707, 440 P.2d 461 (1968).

Ng's first contention is that duress is analogous to self–defense, both in terms of the subjective focus of the defense and in terms of which party bears the burden of proof. Ng argues that the court's instructions neither placed the burden of proof on the State with sufficient clarity, nor made the subjective nature of duress adequately clear to the jurors. The State concedes both that it bore the burden of proof and that a duress claim is judged subjectively. The State instead argues that the instructions made both points sufficiently clear.

We note that the parties assume that the State bore the burden of disproving Ng's duress claim. Although Ng analogizes to self–defense, which the State must disprove beyond a reasonable doubt, *see State v. Acosta,* 101 Wn.2d 612, 683 P.2d 1069 (1984), we perceive several distinctions between self–defense and duress. However, because the State did not object to the duress instructions, and, in fact, concedes that it bore the burden of disproving duress, the instructions are the law of the case and we will consider Ng's arguments predicated on them. *See State v. Berge, supra.* We expressly do not decide whether the State must bear the burden of disproving duress. Our discussion is limited to the facts and law of this case.

Ng does not dispute that instruction 21, Clerk's Papers, at 252, sets forth a definition of duress consistent with RCW 9A.16.060(1) and that it also states that the State bears the burden of disproving the absence of duress beyond a reasonable doubt. Ng maintains, however, that while instruction 6 (general robbery definition for felony murder charges) explicitly referred to duress, Clerk's Papers, at 237, instruction 14 (to convict instruction on robbery) did not contain language referring to duress, or to the State's burden to disprove duress, see Clerk's Papers, at 246–47. Ng contends that the court's failure to include duress language in its "to convict" robbery instruction

deprived him of a fair trial, particularly because the State's burden to disprove duress was unclear.

A trial court has discretion to decide how instructions are worded. *Roberts v. Goerig,* 68 Wn.2d 442, 455, 413 P.2d 626 (1966). Moreover, the instructions must be read as a whole and a requested instruction need not be given if the subject matter is adequately covered elsewhere in the instructions. *State v. Etheridge,* 74 Wn.2d 102, 110, 443 P.2d 536 (1968). Finally, instructions are sufficient if they permit counsel to satisfactorily argue his theory of the case to the jury. *State v. Dana,* 73 Wn.2d 533, 537, 439 P.2d 403 (1968).

This court has said in the context of self–defense that "the test is whether the jury was informed, or could understand from the instructions as a whole, that the State bears the burden of proof . . ." *State v. Acosta, supra* at 622. Moreover, in *Acosta,* this court noted that "the better practice is simply to give a separate instruction clearly informing the jury that the State has the burden . . ." *Acosta,* at 622. Although Ng cites authority allowing the inclusion in a "to convict" instruction of the State's burden to disprove a defense, the case does not suggest that such language is mandatory. *See State v. Fondren,* 41 Wn. App. 17, 23, 701 P.2d 810 (1985). In light of instruction 21 clearly defining duress and the State's burden to disprove it, the instructions as a whole were adequate to allow Ng to argue his theory of the case to the jury.

Ng also challenges instruction 21, defining duress, because it insufficiently advised the jury of the subjective nature of duress. Ng contends that because it is erroneous to fail to inform the jury of the subjective component of self–defense, *see State v. Ladiges,* 66 Wn.2d 273, 401 P.2d 977 (1965); *State v. Theroff,* 95 Wn.2d 385, 622 P.2d 1240 (1980), it is likewise error not to explicitly inform the jury of the subjective nature of duress. Ng's argument is without merit. Instruction 21 is taken verbatim from a Washington Pattern Jury Instruction, *see* WPIC 18.01, which in turn is based on the statutory language of RCW 9A.16.060 defining

duress. The language of the duress statute on its face describes the subjective nature of the defense. The self–defense statute, RCW 9A.16.020(3), on the other hand, describes an objective standard although this court has made it clear that self–defense is to be measured by a standard combining both subjective and objective components. *See, e.g., State v. Miller,* 141 Wash. 104, 105, 250 P. 645 (1926) (pre–statute). Thus, while this court has held that the subjective component of self–defense must be expressed to the jury, no such requirement is necessary for duress. Indeed, both the duress statute and instruction 21 given in this case focus on "the mind of the defendant" and "the mind of the actor." *Compare* WPIC 18.02 *with* RCW 9A.16.060.

Ng also challenges instruction 19, defining accomplice liability. Ng contends that because duress negates the "unlawfulness" and "intent" elements of robbery, it similarly negates accomplice liability. Ng argues that the court should have included the word "voluntarily" in the accomplice instruction and its failure to do so could have allowed the jury to find accomplice liability even if the jury found he was acting under duress. Again we disagree. The instructions as a whole adequately informed the jury of duress.

Next, Ng alleges that the trial court erred by not answering "yes" to a question posed by the jury during deliberations as to whether duress applied to the lesser included charges. However, the trial court has discretion whether to give further instructions to a jury after it has begun deliberations. *State v. Studebaker,* 67 Wn.2d 980, 987, 410 P.2d 913 (1966); *State v. Langdon,* 42 Wn. App. 715, 718, 713 P.2d 120 (1986). Here, the jury sent out a question asking whether "duress" applied to the lesser included charges. The trial court answered with: "please refer to the instructions. The court cannot provide any additional instructions or explanations." Clerk's Papers, at 275. Ng contends the trial court should have answered

"yes" because it was an accurate statement of the law. Instead, the trial court concluded that:

> In my opinion it would have been wrong for the court to further explain the instructions that had been given the jury. Since the instructions answered the [question] that was being asked of the court.
>
> . . .
>
> I am satisfied these twelve intelligent people, considering the instructions as a whole, would be aware of the fact that duress is a defense to the charge to the lesser included offense of robbery. Or any other lesser included offense set forth in the instructions as requested by the defendant.

Verbatim Report of Proceedings, at 22–23 (June 10, 1985).

Ng contends, in a slightly different vein, that the court's robbery instructions created ambiguity by referring explicitly to duress in the definition of robbery for felony murder purposes (instruction 6, Clerk's Papers, at 237), but not in the "to convict" robbery instruction (instruction 14, Clerk's Papers, at 246). In support of this theory, Ng relies on the jury's question, copies of the instructions marked by the jury during deliberations, and statements made by individual jurors after trial.

 The individual or collective thought processes leading to a verdict "inhere in the verdict" and cannot be used to impeach a jury verdict. *State v. Crowell,* 92 Wn.2d 143, 594 P.2d 905 (1979); *State v. McKenzie,* 56 Wn.2d 897, 355 P.2d 834 (1960); *Gardner v. Malone,* 60 Wn.2d 836, 376 P.2d 651 (1962). Here, the jury's question does not create an inference that the entire jury was confused, or that any confusion was not clarified before a final verdict was reached. "[Q]uestions from the jury are not final determinations, and the decision of the jury is contained exclusively in the verdict." *State v. Miller,* 40 Wn. App. 483, 489, 698 P.2d 1123 (citing *State v. Bockman,* 37 Wn. App. 474, 493, 682 P.2d 925, *review denied,* 102 Wn.2d 1002 (1984), *review denied,* 104 Wn.2d 1010 (1985)). Similarly, we refuse to speculate as to the meaning of the marks made on the

instructions by the jury. Also, jurors' post–verdict statements regarding matters which inhere in the verdict cannot be used to attack the jury's verdict. *State v. Crowell, supra* at 146. The jury's verdict was clear and complete. Ng has shown no abuse of discretion in the court's decision to refer the jurors to the instructions as given.

Finally, Ng's contentions regarding the court's failure to define "theft" in the robbery instructions are also without merit. Ng did not request a "theft" definition. Ng acknowledges that omission of an unrequested jury instruction must be of constitutional consequence before an appellate court will review the issue for the first time on appeal. He contends that this issue is of constitutional magnitude and thus merits review. We disagree.

A similar argument was rejected in *State v. Pawling,* 23 Wn. App. 226, 597 P.2d 1367, *review denied,* 92 Wn.2d 1035 (1979). There the jury was instructed that one element of first degree burglary was that the defendant committed an assault while in the dwelling. Although the defendant had not requested an instruction defining assault, he sought to challenge its omission on appeal. The Court of Appeals concluded:

> The constitutional requirement is only that the jury be instructed as to each element of the offense charged. *State v. Emmanuel,* 42 Wn.2d 799, 259 P.2d 845 (1953). Here the jury was so instructed. The failure of the court in the case at bench to define further one of those elements is not within the ambit of the constitutional rule. The claimed error not being of constitutional magnitude, we need not treat it here.
>
> Moreover, there was no necessity for an instruction defining assault. . . . The word "assault" is not exclusively of legal cognizance, and an understanding of its meaning can fairly be imputed to laymen.

*Pawling,* at 232–33. Here, the jury was properly instructed on the elements of first degree robbery. "Theft" like "assault" is a term of sufficient common understanding to allow the jury to convict of robbery. The authority cited by

Ng in support of his argument involved a trial court's failure to instruct on the definition of robbery, leaving the jury uninformed as to the elements of the charge. *See State v. Davis,* 27 Wn. App. 498, 506, 618 P.2d 1034 (1980). No such nondirection occurred here. Therefore, there was no abuse of the trial court's discretion to determine, on its own, whether words used in the instruction required further definition. *See State v. Schimmelpfennig,* 92 Wn.2d 95, 100, 594 P.2d 442 (1979).

We conclude that the instructions, read as a whole, correctly stated the law, informed the jury as to duress and the State's burden to prove its absence, and allowed the parties to argue their theories of the case. Moreover, the trial court did not err in failing, on its own, to give a "theft" definition.

## III

Ng argues that the jury's verdict convicting him of the robbery charges must be reversed because it is inconsistent with the jury's acquittal on the felony murder charges. Because the jury found Ng guilty of the underlying robberies and because Ng did not dispute that the killings occurred, the jury should have found Ng guilty of the felony murder charges.

In *Dunn v. United States,* 284 U.S. 390, 76 L. Ed. 356, 52 S. Ct. 189, 80 A.L.R. 161 (1932), the Supreme Court held that a criminal defendant convicted by a jury on one count of a criminal accusation cannot attack that conviction because it is inconsistent with the jury's verdict of acquittal on another count. As the Court recently observed, although inconsistent verdicts

> present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred . . . such inconsistencies often are a product of jury lenity.

*United States v. Powell,* 469 U.S. 57, 65, 83 L. Ed. 2d 461, 105 S. Ct. 471 (1984).

In *Powell,* the Supreme Court reaffirmed its *Dunn* rule as a "prudent acknowledgment" of the variety of factors including mistake, compromise or lenity that can lead to a jury's inconsistent verdict. *Powell,* at 65. There, the Court affirmed a defendant's conviction on a charge of using the telephone to facilitate the commission of certain felonies even though the jury had acquitted him on the counts charging the commission of those felonies. *Powell,* at 69. The Court rejected as

> imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case[s] the verdict was not the product of lenity, but of some error that worked against them. Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake.

*Powell,* at 66.

In *State v. O'Neil,* 24 Wn.2d 802, 808–09, 167 P.2d 471 (1946), this court noted the *Dunn* rule, but adopted the then prevalent state court rule that where two offenses growing out of the same transaction are charged in separate counts of an indictment and one offense includes elements necessary to the commission of the other, a verdict of acquittal of the one is inconsistent with a verdict of guilty on the other and must be reversed.

A minority of state courts still holds that inconsistent verdicts require reversal. *See, e.g., People v. Sanchez,* 128 A.D.2d 377, 512 N.Y.S.2d 389 (1987); *People v. Foley,* 152 Ill. App. 3d 354, 504 N.E.2d 254, *review denied,* __ Ill. 2d __, 511 N.E.2d 432 (1987); *Davis v. State,* 684 P.2d 147 (Alaska Ct. App. 1984); *State v. Mangrella,* 214 N.J. Super. 437, 519 A.2d 926 (1986), *cert. denied,* 107 N.J. 127, 526 A.2d 194 (1987); *Davidson v. State,* 458 So. 2d 880 (Fla. Dist. Ct. App. 1984). We note, however, that since *O'Neil* was decided a majority of state courts have adopted the *Dunn* rule and hold that consistency between verdicts on the several counts of an indictment or information is

unnecessary where a defendant is convicted on one or some counts but acquitted on others. So long as sufficient evidence supports the guilty verdicts, these courts generally uphold such convictions irrespective of their rationale incompatibility with the acquittals. *See, e.g., Hammers v. State,* 502 N.E.2d 1339 (Ind. 1987); *Lessard v. State,* 719 P.2d 227 (Wyo. 1986); *State v. Stewart,* 729 P.2d 610 (Utah 1986); *State v. Wise,* 237 Kan. 117, 697 P.2d 1295 (1985); *People v. Brown,* 174 Cal. App. 3d 762, 220 Cal. Rptr. 264 (1985); *People v. Caldwell,* 36 Cal. 3d 210, 681 P.2d 274, 203 Cal. Rptr. 433 (1984); *Wright v. State,* 307 Md. 552, 515 A.2d 1157 (1986); *Tilden v. State,* 513 A.2d 1302 (Del. 1986); *Parker v. Mooneyham,* 256 Ga. 334, 349 S.E.2d 182 (1986); *People v. Spencer,* 154 Mich. App. 6, 397 N.W.2d 525 (1986); *State v. Czech,* 343 N.W.2d 854 (Minn. 1984); *Hammond v. State,* 497 So. 2d 558 (Ala. Crim. App. 1986). *See also* Annot., *Inconsistency of Criminal Verdict as Between Different Counts of Indictment or Information,* 18 A.L.R.3d 259, § 3, at 274 (1968).

We also note that the *Dunn* rule has received express recognition in cases where the defendant was convicted of a lesser included offense rather than for the offense originally charged, and the defendant then argued that the acquittal of the original crime was inconsistent with the conviction. *See, e.g., McCloud v. State,* 335 So. 2d 257 (Fla. 1976) (robbery conviction proper although inconsistent with conviction of manslaughter as lesser included offense of felony murder; defendant in no position to complain of lesser sentence); *People v. Parks,* 49 Ill. App. 3d 65, 363 N.E.2d 93 (1977) (no reversible error where defendant acquitted of felony murder but found guilty of armed robbery); *People v. Witzel,* 155 Cal. App. 2d 486, 318 P.2d 136 (1957); *Jackson v. United States,* 313 F.2d 572 (D.C. Cir. 1962); *see also* 76 Am. Jur. 2d *Trial* § 1157, at 125 n.28 (1975); Annot., *supra,* 18 A.L.R.3d 259, § 5, at 284.

Here, Ng seeks reversal of his robbery convictions on the basis that they are inconsistent with the jury's acquittal of him on the felony murder charges. Because Ng does not

dispute that the killings occurred, the jury logically should have found him guilty of the felony murders if it found that he committed the underlying felonies—the robberies. Ng is correct that the verdicts are inconsistent. Nevertheless, we conclude that considerations of jury lenity, and problems inherent in second-guessing the jury's reasoning as to an acquittal dictate our application of the *Dunn* rule to this case. As the Supreme Court noted, the *Dunn* rule establishes "'the unreviewable power of a jury to return a verdict of not guilty for impermissible reasons.'" *Powell,* at 63 (quoting *Harris v. Rivera,* 454 U.S. 339, 346, 70 L. Ed. 2d 530, 102 S. Ct. 460 (1981)).

Where the jury's verdict is supported by sufficient evidence from which it could rationally find the defendant guilty beyond a reasonable doubt, we will not reverse on grounds that the guilty verdict is inconsistent with an acquittal on another count. *See Powell,* at 67. To the extent that *State v. O'Neil, supra,* dictates a different result, it is overruled. Here, overwhelming evidence supports Ng's convictions for first degree robbery. The jury's acquittal of the felony murder charges is not reversible error.

Affirmed.

PEARSON, C.J., UTTER, DOLLIVER, DORE, ANDERSEN, CALLOW, and DURHAM, JJ., and CUNNINGHAM, J. Pro Tem., concur.

Reconsideration denied May 2, 1988.