IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36804-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHERYL. L. SUTTON, | ) | |
| | ) | |
| Appellant, | ) | PUBLISHED OPINION |
| | ) | |
| ALVARO GUAJARDO, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| COLBY D. VODDER, | ) | |
| | ) | |
| Defendant. | ) | |

LAWRENCE-BERREY, J. — A jury convicted Cheryl Sutton of first degree felony murder and of leading organized crime. Her appeal relates only to the latter conviction.

The question we answer today is not new: Whether a trial court abuses its discretion when, during the jury's deliberation, the court declines to answer the jury's question about the law. The general answer is no, and we affirm the challenged conviction.

Nevertheless, a trial court has a responsibility to ensure that the jury understands the law. We take this opportunity to strongly encourage our trial courts to fulfill this responsibility and directly answer a jury's question of law even if it believes its instructions are correct and complete.

## FACTS

The narrow issue on appeal does not require us to recount the evidence linking Cheryl Sutton to her conviction of the first degree felony murder of Bret Snow. We limit our discussion of the facts accordingly.

Law enforcement executed a search warrant looking for evidence of drug trafficking at an address on North Starr Road in Newman Lake, Washington. At the property, they found Cheryl Sutton, Ken Stone, Alvaro Guajardo, and Colby Vodder. The ensuing investigation led to Sutton, Guajardo, and Vodder being arrested for the kidnapping and murder of Bret Snow. Sutton, Guajardo, and Vodder were charged together, but the prosecutions were later bifurcated.

The State charged Sutton with first degree felony murder predicated on kidnapping, first degree kidnapping, and leading organized crime. With respect to the charge of leading organized crime, the State alleged that Sutton

2

did intentionally organize, manage, and direct three or more persons to wit: Ken Stone, Alvaro Guajardo, and Colby Vodder, with the intent to engage in a pattern of criminal profiteering activity, to-wit: Delivery of a Controlled Substance, as defined in RCW 69.50.

Clerk's Papers (CP) at 98.

At trial, the State's evidence showed that Sutton, Stone, and Guajardo lived at the Starr Road property and were involved in the distribution of methamphetamine to numerous people, including Snow. Vodder often was at the property and sold heroin. Sutton ran the drug operation and was the leader of the group. Stone and Guajardo acted as Sutton's enforcers and beat persons who stole from Sutton or did not pay. Nicole Price, Sutton's best friend, was Sutton's driver. She drove Sutton to places where Sutton sold drugs. Before resting, the State dismissed the kidnapping charge.

Sutton testified in her defense. She admitted she sold drugs, but denied she sold drugs or directed Stone, Guajardo, or Vodder.

The trial court instructed the jury on the law. Instruction 24 stated, "A person commits the crime of Leading Organized Crime when he or she intentionally organizes, manages, directs, supervises, or finances any three or more persons with the intent to engage in a pattern of criminal profiteering activity." CP at 169. Instruction 25 stated in relevant part:

3

To convict the defendant of the crime of leading organized crime as charged in Count II, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the period between June 1, 2015 and March 1, 2016, the defendant intentionally organized, managed, directed, supervised or financed three or more persons, Ken Stone, Alvaro Guajardo, and Colby Vodder;

CP at 170.

In its closing, the State argued the evidence proved that Sutton directed Stone, Guajardo, and Vodder. In addition, it noted the evidence showed that Sutton employed her driver, Price. Defense counsel emphasized Sutton's denial that she directed anyone and sought to distance herself from Vodder by arguing they had independent operations— Vodder sold heroin, while Sutton and the others sold methamphetamine.

During deliberations, the jury forwarded a written question to the judge. The judge asked counsel for suggestions on how it should respond to the jury's question: "For instruction #25, must the defendant have organized (etc.) all three of the listed persons specifically, or just any 3 or more persons (as instruction #24 states)?" Report of Proceedings (RP) at 189.

4

Both counsel agreed that the answer was yes.[1] The deputy prosecutor recommended that the court either answer the question yes or provide the standard response that directs the jury to refer back to its instructions. Defense counsel initially agreed, but then asked the court to answer the question yes or direct the jury to instruction 25, the to-convict instruction.

The court discussed what it considered an ambiguity in the jury's written question and did not want to presume it correctly understood the question. It explained that instructions 24 and 25 were clear. It decided that the best answer was to simply direct the jury to refer back to its instructions. Defense counsel then, somewhat unclearly, again requested the court to direct the jury to instruction 25, the to-convict instruction. The court opted to "take the conservative route" and direct the jury to refer to its instructions. RP at 854.

Soon after, the jury returned a verdict of guilty on both remaining counts. The court entered its judgment and sentence, and Sutton timely appealed.

---

[1] The jury's question had two parts. A yes answer to both parts would make no sense. A fair construction of the parties' agreement is that the jury was required to focus only on the three persons listed in instruction 25.

ANALYSIS

Sutton argues the trial court abused its discretion by "declining the proposed defense instruction that accurately stated the law." Br. of Appellant at 1. She assigns error to the trial court "denying a supplemental defense instruction." Br. of Appellant at 2. But the colloquy and the record do not reflect any proposed defense instruction. We will construe Sutton's argument as assigning error to the trial court's decision not to direct the jury to instruction 25, the to-convict instruction.

Defendants are guaranteed a fair trial under the Sixth Amendment to the United States Constitution, which requires jury instructions that accurately inform the jury of the relevant law. *State v. Henderson*, 192 Wn.2d 508, 512, 430 P.3d 637 (2018). To ensure a jury is informed of the relevant law, CrR 6.15(f)(1) permits a trial court to provide the jury with supplemental written instructions on any point of law after deliberations begin.

This court reviews a trial court's decisions on whether to give a supplemental instruction for abuse of discretion. *State v. Sublett*, 176 Wn.2d 58, 82, 292 P.3d 715 (2012). "Abuse of discretion is found only when the decision is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Ugolini v. Ugolini*, 11 Wn. App. 2d 443, 446, 453 P.3d 1027 (2019) (internal quotation marks omitted) (quoting *State v. McCormick*, 166 Wn.2d 689, 706, 213 P.3d 32 (2009)).

A trial court should ensure that the jury understands the law. *State v. Backemeyer*, 5 Wn. App. 2d 841, 849, 428 P.3d 366 (2018) (citing *Bollenbach v. United States*, 326 U.S. 607, 612-13, 66 S. Ct. 402, 90 L. Ed. 350 (1946); *United States v. Hayes*, 794 F.2d 1348, 1352 (9th Cir. 1986)).  When it is apparent the jury does not understand the law, the trial court may and should issue a supplemental written instruction.  A failure to do so is inconsistent with its responsibility to ensure the jury understands the law and risks the jury rendering a verdict contrary to the evidence.

Sutton argues that the trial court should have given a supplemental instruction to clarify the law.  In making this argument, she relies on *Backemeyer*.  There, Backemeyer was in a bar rolling a marijuana joint and drinking a beer he had purchased elsewhere.  *Id.* at 844.  Nicholas Stafford, a bouncer at the bar who blended in with patrons, took Backemeyer's beer and told him to leave.  *Id.* According to Backemeyer, Stafford did not identify himself as a bar employee.  *Id.* at n.1.  Backemeyer remained at the bar for several minutes.  *Id.*  Stafford confronted him and a scuffle ensued.  *Id.*  The much larger Stafford pushed Backemeyer to the floor and punched out some of his teeth.  *Id.* Backemeyer drew a knife, badly cut Stafford's face, and then fled.  *Id.* at 844-45.

The State charged Backemeyer with first degree assault with a deadly weapon.  *Id.* at 845.  The interplay between a self-defense instruction and a stand-your-ground

7

instruction made it unclear whether Backemeyer was entitled to use self-defense if he was a trespasser or if he was doing something illegal. *Id.* at 845-46.

During deliberations, the jury submitted a written question that reflected its confusion. Defense counsel expressed his concern that the jury was "'trying to get rid of self-defense'" if Backemeyer was a trespasser. *Id.* at 847. Nevertheless, he agreed with the State that the trial court should tell the jury to refer to its instructions. *Id.* A second question from the jury implied the jury would negate Backemeyer's claim of self-defense if it found that Backemeyer was rolling a marijuana joint or had brought a beer into the bar. *Id.* This second question made it clear the jury did not understand the law of self-defense. *Id.* Nevertheless, defense counsel agreed with the State that the trial court should tell the jury to refer to its instructions. *Id.*

We held that defense counsel performed deficiently and Backemeyer was prejudiced. We saw no reason why, if asked, the trial court would refuse to clarify the law, given the jury clearly misunderstood the law of self-defense. We noted if the trial court had refused, its refusal would have been contrary to its responsibility to ensure that the jury understood the law. *Id.* at 849-50.

*Backemeyer* is distinguishable from this case. There, it was clear that the jury misunderstood the law. Here, the to-convict instruction was clear. The jury's question

8

confirms it understood that to convict Sutton of leading organized crime, it needed to focus only on Stone, Guajardo, and Vodder.[2]

Unless shown otherwise, it is presumed a jury follows the court's instructions. *State v. Swan*, 114 Wn.2d 613, 661-62, 790 P.2d 610 (1990). While the jury did initially raise a question about the interplay between instructions 24 and 25, it did not ask any further questions after being told to review the instructions. This single question does not overcome the presumption the jury followed the court's instructions.

A case on point is *State v. Ng*, 110 Wn.2d 32, 750 P.2d 632 (1988). In *Ng*, the jury asked whether the term "duress" applied to all lesser charges. *Id.* at 36. *Ng* argued the trial court should have answered yes because it was an accurate statement of law. *Id.* at 42-43. Instead, the trial court referred the jury back to the instructions. *Id.* at 43. The *Ng* court concluded that the trial court had not abused its discretion. In so concluding, it noted "the jury's question does not create an inference that the entire jury was confused, or that any confusion was not clarified before a final verdict was reached." *Id.* at 43.

Similarly here, the jury's question did not create an inference that the entire jury was confused or that any confusion was not clarified before the jury reached its verdict.

---

[2] Because the jury correctly understood the to-convict instruction, we need not address Sutton's related argument that a comma, rather than a colon, should have preceded the names of the three men in instruction 25.

No. 36804-1-III
*State v. Sutton*

The jury's question shows it understood that the to-convict instruction required it to find that Sutton organized, etc., the three persons named in the instruction—Stone, Guajardo, and Vodder.

At a minimum, the jury's question showed that some jurors wanted assurance they need not be concerned about the different wording in instruction 24. And because the trial court has a responsibility to ensure that the jury understands the law, it should have answered the jury's question. It could have answered: "To convict Sutton of leading organized crime, the State must prove the elements of that crime as set forth in Instruction 25 beyond a reasonable doubt." Nevertheless, the trial court's decision not to answer the jury's question was not an abuse of discretion.

Affirmed.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____           _____
Siddoway, A.C.J.                           Fearing, J.

10