

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37862-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| FRED KARBEN, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Fred Karben appeals his judgment and sentence for felony harassment. We affirm.

## FACTS

Fred and Kaikapu Karben were married in 2005 and have two minor daughters. Mr. Karben also had three children from a previous relationship, including an adult daughter named Chrismila. The Karbens have a history of domestic violence. In 2010, Mr. Karben beat his wife with a chair and later stabbed himself with a knife. The Karbens separated in 2014.

In 2019, Kaikapu Karben filed a child support claim after a dispute with Mr.
Karben. She later withdrew the request.

On January 18, 2020, there were numerous phone calls between Mr. Karben,
Kaikapu Karben, Chrismila Karben, and one of the minor daughters (C.K.)[1] concerning
Kaikapu Karben's child support claim. The conversations devolved into a heated
argument, with the two parents shouting and swearing at each other. Mr. Karben told[2]
his adult daughter, Chrismila, he wanted to knock some sense into her. Mr. Karben also
stated he would come over to Kaikapu Karben's house to kill her, Chrismila Karben,
other members of the family, and himself.

Kaikapu Karben called the police to report the threats and stayed in a hotel with
the children that night. She was fearful and believed Mr. Karben's threats to be genuine
based on both the 2010 domestic violence incident as well as the fact that Mr. Karben had
never before threatened his children.

---

[1] The initial call was placed by Mr. Karben to C.K.'s phone, which Kaikapu
Karben appears to have answered. Kaikapu Karben and the children then used C.K.'s
phone to place subsequent calls to Mr. Karben.

[2] Specifically, Chrismila Karben alleged her father said something in the
Marshallese language which roughly translated to "[h]e wished to hit me, to put some
common sense into my head." 1 Report of Proceedings (Sept. 30, 2020) at 372.

2

No. 37862-4-III
*State v. Karben*

The State charged Mr. Karben with one count of domestic violence felony harassment under RCW 9A.46.020(2)(b). Trial commenced on September 29, 2020. Mr. Karben testified and denied making any threats of violence. He claimed he told Kaikapu Karben her child support request was akin to him shooting himself because he could not afford it.[3] On cross-examination, Kaikapu Karben testified she no longer feared her husband. C.K. also testified she did not believe Mr. Karben was going to kill her that night.

The trial court provided the jury the following instructions:

> Instruction No. 6. A person commits the crime of harassment when he, without lawful authority, knowingly threatens to cause bodily injury immediately or in the future to another person and when he by words or conduct places the person threatened in reasonable fear that the threat will be carried out and the threat to cause bodily harm consists of a threat to kill the threatened person or another person.
> Instruction No. 7. To convict the defendant of the crime of harassment, each of the following elements of the crime must be proved beyond a reasonable doubt: 1) That on or about January 18th of 2020, the defendant knowingly threatened to kill Kaikapu Karben or any other person immediately or in the future; 2) That the words or conduct of the defendant placed Kaikapu Karben in reasonable fear that the threat to kill would be carried out; 3) That the defendant acted without lawful authority; and 4) That the threat was made or received in the State of Washington.

---

[3] Fred testified he said, "the time for child support is so heavy on me right now. It's like you killing me, Kai. It's not perfect time for pulling this on me, you're killing me, it's like shooting myself, that's it." 1 Report of Proceedings (Sept. 30, 2020) at 423.

3

1 RP (Sept. 30, 2020) at 465; *see also* Clerk's Papers (CP) at 113-14.

During summation, the State argued Mr. Karben was guilty of felony harassment because of the threats against Kaikapu Karben and the children. In referencing the elements of the offense set forth in jury instruction 7, the State stated the first element of the offense required it to prove "that on or about January the 18th, the defendant knowingly threatened to kill Kaikapu Karben immediately or in the future." 1 RP (Sept. 30, 2020) at 472-73.

Mr. Karben's defense was that the witnesses against him were either lying or mistaken. He denied issuing threats against his wife or the children. Mr. Karben admitted he was angry and frustrated at the time of his telephone conversation. He claimed he made the statement about shooting himself in the head as a "signal of frustration" akin to what one might do with a hand gesture. 1 RP (Sept. 30, 2020) at 482. No claim was made that Mr. Karben ever actually intended to harm himself.

During deliberations, the jury asked the trial court "does the term 'or any other person' mean the defendant as well?" CP at 123; 2 RP (Oct. 2, 2020) at 508. The following exchange occurred between the trial court and counsel with regard to the inquiry:

> [THE COURT:] My intended response to this is please continue
> deliberations, you are to consider only the testimony of the witnesses, the

4

exhibits admitted into evidence, and the instructions of the Court on the law. Anything from the state with regards to the intended answer?

[THE STATE]: Nothing from the state, Your Honor.

THE COURT: [Defense counsel?]

[DEFENSE COUNSEL]: Of course I would like to say no, but I will leave that to the Court's discretion. If you do not want to go with no, then your language is fine.

THE COURT: With that, I don't believe that the answer no is appropriate, referring the jury back to then the instructions that they have been previously provided. From the Court's perspective, is the appropriate and proper way to go. So that being there for the record, I will return the answer to the jury and have them continue deliberations.

2 RP (Oct. 2, 2020) at 508; *see also* CP at 123 (inquiry from the jury and court's written response). The jury convicted Mr. Karben of domestic violence felony harassment.

At sentencing, the State sought the imposition of several legal financial obligations (LFOs), including a $100 domestic violence assessment fee and a $200 criminal filing fee. The State noted in its briefing that the court could waive the filing fee if it found Mr. Karben indigent.

Mr. Karben informed the court he paid $946 per month in child support in addition to supporting his own family of three, and asked the court to waive the fee. The court inquired into Mr. Karben's income. Mr. Karben provided paystubs showing he earned $19 per hour as a landscaper, and indicated he would continue working throughout the winter. The court imposed a three-day jail sentence with 12 months of community custody under the first-time offender waiver provisions in RCW 9.94A.650. The court found

Mr. Karben was not indigent, and imposed the $100 domestic violence assessment fee and a $200 criminal filing fee.

Mr. Karben now appeals his judgment and sentence. Mr. Karben successfully moved in the trial court to proceed with his appeal at public expense. In a declaration attached to the motion, Mr. Karben represented that he had a monthly income of $1500 after his child support payments.

ANALYSIS

*Jury instructions*

Mr. Karben argues the trial court erred by issuing a jury instruction that allowed him to be convicted based on a threat of self-harm. Mr. Karben does not argue that the harassment statute fails to cover threats of self-harm; instead, he claims a statement of self-harm is constitutionally protected free speech. Mr. Karben also contends the court erred by declining to provide a clarifying instruction on this point in response to the jury's question.

Mr. Karben's arguments require us to address the foundational issue of whether the jury instructions were in fact confusing, such that they could be interpreted to encompass threats of self-harm. If the jury instructions did not suggest Mr. Karben could

be convicted based on self-harm, we need not address the parties' dispute over whether a threat of self-harm qualifies as constitutionally protected speech.

"Instructions must be considered as a whole and the reviewing court must assume that the jury followed the instructions." *State v. Teaford*, 31 Wn. App. 496, 500, 644 P.2d 136 (1982). "We review challenged jury instructions de novo, examining the effect of a particular phrase in an instruction by considering the instructions as a whole and reading the challenged portions in the context of all the instructions given." *State v. Gerdts*, 136 Wn. App. 720, 727, 150 P.3d 627 (2007).

Read in context, the court's to-convict instruction was not confusing. Jury instruction 7 accurately sets forth the applicable language in Washington's harassment statute. RCW 9A.46.020. Whatever lack of clarity may have been caused by jury instruction 7's reference to "any other person" is resolved by jury instruction 6, which makes plain that, for purposes of the crime of harassment, the target of the defendant's threat must be "another person," i.e. not the defendant himself. CP at 113 ("A person commits the crime of harassment when he, without lawful authority, knowingly threatens to cause bodily injury immediately or in the future *to another person*") (emphasis added).

This appeal could have been avoided had the trial court simply answered "no" to the jury's question regarding whether the phrase "any other person" included the

7

defendant. The State never argued Mr. Karben could be convicted by threatening self-harm. Answering "no" to the jury's question would not have prevented the jury from convicting Mr. Karben based either on threats to Kaikapu Karben or threats to the children. In cases such as the one at bar where the answer to the jury's question is straightforward and not prejudicial, it would be preferable for the court to provide an answer beyond referring the jury back to its instructions.

Nevertheless, "the trial court has discretion whether to give further instructions to a jury after it has begun deliberations." *State v. Ng*, 110 Wn.2d 32, 42, 750 P.2d 632 (1988). Here, we cannot say the court abused its discretion. As noted, the answer to the jury's question was contained in jury instruction 6. The fact that the jury submitted a question "does not create an inference that the entire jury was confused, or that any confusion was not clarified before a final verdict was reached." *Id*. at 43. "[Q]uestions from the jury are not final determinations, and the decision of the jury is contained exclusively in the verdict." *State v. Miller*, 40 Wn. App. 483, 489, 698 P.2d 1123 (1985). Mr. Karben has not established that his trial was tainted by erroneous jury instructions.

We note that even if jury instruction 7 had been confusing, it would not automatically require reversal of Mr. Karben's conviction. If an instructional error is constitutional in nature, it is subject to a harmless error analysis that asks whether the

reviewing court is convinced beyond a reasonable doubt that the jury would have reached the same result in the absence of the error. *See State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985).

Here, any potential confusion was harmless beyond a reasonable doubt. The State repeatedly advised the jury that the threats at issue in the case were the ones against Kaikapu Karben and the children. When discussing the elements set forth in the to-convict instruction, the State narrowed its case to the threats against Kaikapu Karben. No witness ever testified that they thought Mr. Karben would carry out a threat of self-harm. Mr. Karben and his attorney repeatedly told the jury that Mr. Karben's statements about shooting himself in the head were a way of voicing frustration. The record reveals no reasonable possibility that the jury convicted Mr. Karben of harassment based on threats of self-harm.

Because we determine that the instructions did not allow for a conviction based on self-harm, we need not address Mr. Karben's arguments that threats of self-harm are constitutionally protected.

*LFOs*

For the first time on appeal, Mr. Karben challenges the trial court's imposition of LFOs. Mr. Karben claims he meets the definition of indigence set forth at

9

RCW 10.101.010(3)(a)-(c). Thus, the trial court should have been precluded from imposing a $100 domestic violence assessment fee or a $200 criminal filing fee. We address each of the two LFOs in turn.

The authority for the domestic violence penalty assessment fee is contained in RCW 10.99.080. This statute makes imposition of a domestic violence assessment fee discretionary; however, the focus of the discretion is unique. *State v. Smith*, 9 Wn. App. 2d 122, 127, 442 P.3d 265 (2019). Instead of hardship to the defendant, the statute's focus is on the victim. *See* RCW 10.99.080(5). Oftentimes a domestic violence defendant will have financial obligations to the victim, such as child support. In such circumstances, the trial court may decide not to impose an assessment in order to better assure the victim's needs are met. But if imposition of the assessment will not interfere with obligations to the victim, "then the penalty may be ordered without further concern for the defendant's financial circumstances or ability to pay." *Smith*, 9 Wn. App. 2d at 128. Given the unique nature of the domestic violence assessment fee, Mr. Karben's assertion of indigence did not preclude the trial court from imposing it. The criminal filing fee is governed by RCW 36.18.020(2)(h). Imposition of the filing fee is generally mandatory. However, the statute provides that a trial court may not impose a criminal filing fee against a defendant who meets the definition of indigence set forth at RCW 10.101.010(3)(a)-(c).

10

Defendants are indigent under this definition if they (a) receive a qualifying form of public assistance, (b) have been involuntarily committed in a public mental health facility, or (c) have an annual income, after taxes, of 125 percent or less of the current federal poverty level. RCW 10.101.010(3)(a)-(c).

The record does not indicate Mr. Karben meets the definition of indigence set forth at RCW 10.101.010(3)(a)-(c). There is no indication Mr. Karben has been on public assistance or that he has been involuntarily committed. As he acknowledges, Mr. Karben's income of $19 per hour places him above 125 percent of the federal property level for a family of three. Mr. Karben's argument is that his child support obligations reduce the amount of his available income. However, nothing in RCW 10.101.010(3)(c) or the federal poverty guidelines requires that income be adjusted based on child support. The fact that the court found Mr. Karben to be indigent for purposes of appointment of counsel does not mean he is indigent for purposes of RCW 10.101.010(3)(a)-(c). *Smith*, 9 Wn. App. 2d at 126.

The trial court was not prohibited from imposing either the domestic violence assessment fee or the criminal filing fee. Mr. Karben's challenge to the court's imposition of LFOs fails.

11

CONCLUSION

The judgment and sentence is affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Fearing, J.

12