IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38300-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JASON REY CRUZ-BARRERA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Jason Rey Cruz-Barrera was convicted of felony violation of a no-contact order protecting Alisha Rivera, whom he had formerly dated. He challenges the sufficiency of the evidence, arguing that "[t]he State's evidence could not physically place Mr. Cruz Barrera [at Ms. Rivera's apartment] in Pullman or otherwise corroborate Ms. Rivera's bare allegation of a direct violation." Appellant's Opening Br. at 1. Ms. Rivera's sworn testimony was clearly enough. We affirm.

FACTS AND PROCEDURAL BACKGROUND

Following the breakup of what Alisha Rivera would later characterize as her "very toxic" relationship with Jason Cruz-Barrera, she obtained a no-contact order against him

in 2019. Report of Proceedings (RP)[1] at 171. On December 3, 2019, a friend of Ms.

Rivera's reported to police on Ms. Rivera's behalf that Mr. Cruz-Barrera had violated

the order by coming to Ms. Rivera's Pullman apartment. Ms. Rivera alleged that Mr.

Cruz-Barrera came to her apartment three times: twice on December 2 and once on

December 3. She alleged that on December 2, he entered her apartment, grabbed her key

to the apartment, and left. Shortly thereafter, she claimed, he returned and threw her key

into the apartment. She surmised that in the interim, he had a copy made of her key,

because she claims he was able to enter the apartment without knocking on his second

arrival on December 2 and his return on December 3.

The State eventually charged Mr. Cruz-Barrera with three counts of residential

burglary, three counts of felony violation of a court order, and one count of theft in the

third degree. The residential burglary and violation of a court order counts were all

charged as domestic violence crimes.

The case proceeded to trial in June 2021. The State's first witness was Ms.

Rivera. In direct examination, she testified to the following events having occurred on

December 2 and 3, 2019:

> A So, I was home and I heard a knock at my door and at the time
> my door didn't have a peep hole and so I couldn't look out to see who it

---

[1] Our record contains two nonconsecutively numbered reports of proceedings. All citations are to the report of proceedings that contains the trial.

was. I opened it, it was Jason. He barged in and at the time I didn't know that he had taken my key for my door and soon after he left and yeah.

Q And can you tell me what happened after he barged in between the two of you?

A We had some sort of conversation. I told him to leave. I started screaming and at that time he, I'm assuming had already had my key and so he had what he wanted. So, he just left after.

Q And at some point did he come back that same day?

A Yes, he did come back.

Q And do you recall approximately how long after he had left the first time?

A It was only a few minutes.

Q And on that second time that he came back, what did you do?

A So, that second time, so my door was locked but he had my key, so he unlocked it and threw my original key inside and left.

Q And did you notify law enforcement at that time?

A Not that day, no.

Q Okay and why not?

A I didn't have a cellphone, so I wasn't able to make any calls.

Q And when was the next time you saw Mr. Cruz Barrera?

A So, I saw him the following day. He had come back to my apartment and that's when I had a friend call law enforcement and that's when they came to my apartment.

Q And what—do you recall about what time that was?

A No.

Q And do you recall approximately how long after you had contacted your friend that law enforcement arrived at your apartment?

A It was only a few minutes.

Q Okay and you didn't contact law enforcement that day because—

A Because I didn't have a cellphone.

3

Q  And so if you didn't have a cellphone, how were you able to contact your friend?

A  I had a tablet and it had a messaging app that I was able to message her from.

Q  And was that using cellular data?

A  It was Wi-fi.

RP at 175-76.

When cross-examined, Ms. Rivera testified in part as follows:

Q   By the way, so you—just back up a little.  You weren't missing any keys after the 2nd, after his second trip.  You didn't find any keys missing, correct?

A  Just my—just my apartment key.

Q  But he returned that, right?

A  Yes.

Q  Okay and it's your suspicion he made a copy of it?

A  Yes.  Yeah.

Q  Because on the 3rd he came in without you opening the door?

A  Yes.

Q  And what did you guys talk about on the 3rd?

A  I don't remember exactly what we talked about.

Q  How long did you talk?

A  Not long.

Q  But then you soon reported it?

A  Yes.

Q  Did you argue, did you fight on the 3rd or did you just have a conversation?

A  I wouldn't say we argued.  I mean I'm assuming I asked him to leave.

4

Q  And what time did this occur?

A  I don't remember exactly the time.

Q  Did you make a—did you make a written statement for the police?

A  I'm sorry, could you—

Q  I'm sorry.  Did you make a written statement for the police?  Did you write out a statement for the police about what happened?

A  I believe I did.

Q  Okay and if I showed that to you, would it help refresh your memory maybe?

A  Yes.

Q  Okay.

A  3:00 p.m.  Yes, yeah.

Q  So, [what] time did you tell the police in your written statement that Jason was there on the 3rd?

A  3:00 p.m.

RP at 181-82.

Other witnesses called by the State were the officer who responded to Ms. Rivera's complaint on December 3 and another Pullman officer who testified to cell phone information for Mr. Cruz-Barrera's phone that was obtained by search warrant from his carrier, U.S. Cellular.  Mr. Cruz-Barrera called three family members who could provide alibi evidence for parts of the day on December 2 and 3.

The jury found Mr. Cruz-Barrera not guilty of residential burglary or theft on December 2 and 3, but returned guilty verdicts on the charges of violation of a court order on both dates.  Mr. Cruz-Barrera successfully moved the court to declare a mistrial

on the December 2 violation of the court order charges. An answer to a jury question during deliberations erroneously informed jurors that certain instructions could relate to *any* violation of the no-contact order, not just entry of Ms. Rivera's residence, while the charging document and elements instructions had been specific to "entry" for the December 2 violations alleged. *See* Clerk's Papers at 78-79, 101-02.

Mr. Cruz-Barrera appeals his conviction for the December 3 no-contact order violation.

## ANALYSIS

Mr. Cruz-Barrera makes a single assignment of error: "The State failed to present sufficient evidence Mr. Cruz Barrera violated the no-contact order." Appellant's Opening Br. at 1. In identifying the issue presented, he contends, "The State's evidence could not physically place Mr. Cruz Barrera in Pullman or otherwise corroborate Ms. Rivera's bare allegation of a direct violation of the no-contact order." *Id.*

When presented with a challenge to the sufficiency of the evidence, we review "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Where the sufficiency of evidence is challenged in a criminal case, "all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Id.*

Mr. Cruz-Barrera's argument that "the State could not prove that [he] was in Pullman at the time of the alleged incident," Appellant's Opening Br. at 9, asks us to disbelieve Ms. Rivera's trial testimony. But we defer to the trier of fact on "issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Van Tuyl*, 132 Wn. App. 750, 760, 133 P.3d 955 (2006). It matters not that Mr. Cruz-Barrera can provide reasons why we should disbelieve Ms. Rivera and credit his trial evidence and argument instead. The jury found otherwise.

Mr. Cruz-Barrera also argues that because the jury found him not guilty of burglary, this "implicitly means there was no contact between Ms. Rivera and Mr. Cruz Barrera." Appellant's Opening Br. at 10. As the State conceded in addressing the mistrial issue, however, "the jury might have thought that Ms. Rivera . . . exaggerated her contact with Mr. Cruz-Barrera" given defense evidence she was "a scorned woman out to get Mr. Cruz-Barrera." CP at 143. More fundamentally, the Washington Supreme Court has adopted the rule of *United States v. Powell*, 469 U.S. 57, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984), under which, "[c]onsidering the important role of 'jury lenity,' and problems inherent in second-guessing the jury's reasoning," the United States Supreme Court upheld "the '"power of a jury to return a verdict of not guilty for impermissible reasons,"'" so long as the jury's guilty verdict is supported by sufficient evidence. *State v. Goins*, 151 Wn.2d 728, 733-34, 92 P.3d 181 (2004) (quoting *State v. Ng*, 110 Wn.2d

32, 48, 750 P.2d 632 (1988) (quoting *Powell*, 469 U.S. at 63)). Ms. Rivera's testimony is

sufficient evidence.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Siddoway, C.J.

WE CONCUR:

Pennell, J.                                          Staab, J.